**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 11 2000**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

JACK DALE WALKER,

        Petitioner-Appellant,

v.

GARY GIBSON, Warden, Oklahoma
State Penitentiary,

        Respondent-Appellee.

No. 99-5186

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**
**(D.C. No. 97-CV-208)**

---

Scott W. Braden, Assistant Federal Public Defender, (Susan M. Otto, Federal
Public Defender with him on the reply brief), Oklahoma City, Oklahoma, for
Petitioner-Appellant.

William L. Humes, Assistant Attorney General, (W.A. Drew Edmondson,
Attorney General of Oklahoma with him on the brief), Oklahoma City, Oklahoma,
for Respondent-Appellee.

---

Before **TACHA** , **BRORBY** , and **MURPHY** , Circuit Judges.

---

**BRORBY** , Circuit Judge.

---

Petitioner-appellant Jack Dale Walker was convicted of two counts of first degree murder and sentenced to death. The Oklahoma Court of Criminal Appeals affirmed on direct criminal appeal. *See Walker v. State*, 887 P.2d 301 (Okla. Crim. App. 1994), *cert denied*, 516 U.S. 859 (1995). That court also denied post-conviction relief, as well as discovery and an evidentiary hearing. *See Walker v. State*, 933 P.2d 327 (Okla. Crim. App. 1997), *cert. denied*, 521 U.S. 1125 (1997).

Thereafter, Mr. Walker unsuccessfully sought habeas corpus relief in the federal district court. The district court granted a certificate of appealability (COA) on the following claims: (1) substantive and procedural due process competency; (2) ineffective assistance of trial counsel; (3) failure to instruct on the presumption of innocence; (4) improper admission of a sheriff's deputy's testimony; (5) lack of notice of aggravating circumstances; and (6) prosecutorial misconduct. This court expanded the COA to include an additional issue: failure to give a first degree manslaughter instruction. Exercising jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253(c), we affirm the district court's denial of habeas corpus relief.

**FACTS**

On December 30, 1988, at approximately 8:00 a.m., Mr. Walker stopped at the trailer home where Shelly Ellison, the mother of his baby son, was staying.

The trailer belonged to Juanita Epperson, Shelly's grandmother. At the time, Shelly, the baby, Juanita, Juanita's son Donnie Epperson, Donnie's wife Linda, and four other grandchildren of Juanita's were staying there.

Hansel Norton, Mr. Walker's co-worker, drove Mr. Walker to the trailer. According to Hansel, Mr. Walker was upset, had a knife, and asked Hansel to talk to him. Mr. Walker told Hansel he had something to do before going to work.

When Mr. Walker arrived at the trailer, he told Juanita he wanted to talk to Shelly. Juanita invited him inside. He talked to Shelly and apparently sought to take the baby. Juanita explained the baby was sick and Mr. Walker could not take him.

Mr. Walker then attacked Shelly. She cried for Donnie to help her. He emerged from a bedroom. A fight broke out. Mr. Walker stabbed both Donnie and Shelly with the large, sharpened knife he had brought with him. He also stabbed Shelly with an ice pick. Sometime during the fight, Shelly made a 911 call. Juanita tried to stop Mr. Walker by hitting him with a pipe wrench. He hit her, breaking her arm. Also, he stabbed her. Mr. Walker threatened Linda and one of the grandchildren, Brian Epperson, with the knife and chased them out of the trailer.

Thereafter, Mr. Walker tried to stab himself in the throat with a paring knife, but the knife broke. He then slashed his wrist. When the police arrived,

-3-

Shelly was dead and Mr. Walker was lying unconscious on the front porch of the trailer. Donnie was alert and conscious, but he died thereafter. Shelly suffered more than thirty-two stab wounds. Donnie sustained eleven.

The jury found Mr. Walker guilty of two counts of first degree murder for the deaths of Shelly and Donnie, one count of assault and battery with a deadly weapon with respect to Juanita, and two counts of assault with a deadly weapon with respect to Linda and Brian. At the second stage of trial, the jury found three aggravators: (1) Mr. Walker created a great risk of death to more than one person; (2) the murders were especially heinous, atrocious, or cruel; and (3) Mr. Walker constitutes a continuing threat to society. Mr. Walker received the death penalty for the murders and a total of forty years' incarceration for the other offenses.

**STANDARDS OF REVIEW**

Because Mr. Walker filed his habeas petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the provisions of AEDPA govern this appeal. *See Williams v. Taylor*, 120 S. Ct. 1495, 1518 (2000). Under AEDPA, if a claim was adjudicated on its merits in state court, a petitioner is entitled to federal habeas relief only if he can establish that the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United

-4-

States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2). Under § 2254(d)(1), a federal court may grant a writ of habeas corpus only if the state court reached a conclusion opposite to that reached by the Supreme Court on a question of law, decided the case differently than the Supreme Court has decided a case with a materially indistinguishable set of facts, or unreasonably applied the governing legal principle to the facts of the petitioner's case. *See Williams*, 120 S. Ct. at 1523. "Under § 2254(d)(1)'s 'unreasonable application' clause . . ., a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Williams*, 120 S. Ct. at 1522. "In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." *Williams*, 120 S. Ct. at 1523. AEDPA also requires federal courts to presume state court factual findings are correct, and places the burden on the petitioner to rebut that presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

"If[, however, a] claim was not heard on the merits by the state courts, and the federal district court made its own determination in the first instance, we

review the district court's conclusions of law *de novo* and its findings of fact, if any, for clear error." *LaFevers v. Gibson*, 182 F.3d 705, 711 (10th Cir. 1999). If the district court's factual findings are based only on a review of the state court record, we conduct an independent review. *See Smallwood v. Gibson*, 191 F.3d 1257, 1264 n.1 (10th Cir. 1999), *cert. denied*, 2000 WL 625676 (U.S. Oct. 2, 2000) (No. 99-9445).

**ARGUMENT**

**I. Competency**

Mr. Walker raises both procedural and substantive due process competency claims. He first argues he was deprived of procedural due process when the trial court applied an unconstitutional burden of proof at his competency hearing. He also argues he was denied substantive due process because he was actually incompetent at the time of trial.

A. Procedural Due Process Competency Claim

Mr. Walker argues the trial court unconstitutionally required him to prove his incompetency by clear and convincing evidence in violation of *Cooper v. Oklahoma*, 517 U.S. 348 (1996). *Cooper* held the clear and convincing evidence standard was "incompatible with the dictates of due process," because it "allow[ed] the State to put to trial a defendant who is more likely than not incompetent." *Id.* at 369. Although the trial court did not articulate the burden of

proof at the competency hearing,[1] Mr. Walker asserts the court presumably followed Oklahoma law, which then required a defendant to prove he was incompetent by clear and convincing evidence.

We agree that the trial court presumably applied this law. *Cf. Valdez v. Ward*, 219 F.3d 1222, 1243-44 (10th Cir. 2000) (presuming Oklahoma Court of Criminal Appeals, which did not cite standard, reviewed merits of ineffective assistance of counsel claim under clear and convincing evidence standard later held unconstitutional in *Cooper*). Thus, Mr. Walker properly asserts a procedural competency claim by alleging the trial court held a hearing employing an unconstitutional burden of proof. *See Van Woudenberg ex rel. Foor v. Gibson*, 211 F.3d 560, 567 (10th Cir. 2000).

Procedural competency claims are subject to procedural default. *See Clayton v. Gibson*, 199 F.3d 1162, 1170 & n.3 (10th Cir. 1999), *cert. denied*,

---

[1] Although labeled a competency hearing in the transcript, the hearing was not initiated as and did not take the form of a formal competency hearing. Actually, the hearing was a sanction against Mr. Walker for failing to disclose the report of Dr. Nicholson, who had examined Mr. Walker to assess his sanity and whether he constituted a continuing threat to society and whether he had created a great risk of death to more than one person. During the course of this hearing, however, the trial court required Dr. Nicholson to state whether he believed Mr. Walker was competent.

2000 WL 697188 (U.S. Oct. 2, 2000) (No. 99-9630). The State argues this claim is procedurally barred. We disagree. [2]

Mr. Walker filed his direct appeal before the Supreme Court decided *Cooper*. He therefore raised a *Cooper* claim for the first time in post-conviction proceedings. The Oklahoma Court of Criminal Appeals held Mr. Walker had waived the issue because he failed to raise it on direct appeal. *See Walker*, 933 P.2d at 338-39. In so holding, the court applied the 1995 amendments to Oklahoma's post-conviction procedures. *See id.* at 339 & n.55 (citing Okla. Stat. tit. 22, § 1089(C)(1)).

The 1995 amendments limit a petitioner's ability to bring claims in a post-conviction application that were not raised on direct appeal, including new claims based on an intervening change in law. *See Clayton*, 199 F.3d at 1171. Mr. Walker's direct appeal, however, was decided in 1994, before the effective date of the 1995 amendments. This court has held, when considering *Cooper* claims, that the 1995 amendments are not an adequate state ground for procedural default, if the claims did not exist at the time of the default. *See id.; Walker v. Oklahoma*, 167 F.3d 1339, 1345 (10th Cir. ), *cert. denied*, 120 S. Ct. 449 (1999).

---

[2] This court has rejected Mr. Walker's argument that the State cannot challenge the district court's rejection of procedural bar without filing a cross appeal. *See Jones v. Gibson*, 206 F.3d 946, 955 n.4 (10th Cir. 2000).

Because Mr. Walker's *Cooper* claim would not have been barred under pre-1995 standards, the State's procedural bar is not adequate to preclude habeas review. *See Valdez*, 219 F.3d at 1240; *Walker*, 167 F.3d at 1345.

The State asserts this court's decision in *Walker*, 167 F.3d at 1344-45, is insufficient to support a conclusion that the Oklahoma Court of Criminal Appeals would consider *Cooper* to be an intervening change of law excusing procedural default. To support this argument, the State cites the unpublished decision of *Smith v. State*, No. PC 97-1656 at 6-9 (Okla. Crim. App. July 27, 1999) (citing *Walker*, 933 P.2d at 339). *But see Valdez v. State*, 933 P.2d 931, 933 n.7 (Okla. Crim. App. 1997) (recognizing *Cooper* is intervening change of law); Okla. Ct. Crim. App. R. 3.5(C)(3) (providing unpublished opinion is not binding precedent). Contrary to the State's argument, *Walker* is binding law in this circuit. *See Thomas v. Gibson*, 218 F.3d 1213, 1226 & n.14 (10th Cir. 2000). We therefore address the merits of Mr. Walker's procedural due process competency claim, reviewing the district court's decision *de novo*, *see LaFevers*, 182 F.3d at 711.

The criminal trial of one who is incompetent violates due process. *See McGregor v. Gibson*, 219 F.3d 1245, 1250 (10th Cir. 2000) (citing *Cooper*, 517 U.S. at 354) (petition for rehearing en banc was granted). Because the trial court presumably held Mr. Walker to an unconstitutional burden of proof, we

afford no presumption of correctness to the trial court's finding of competency. *See Wallace v. Ward*, 191 F.3d 1235, 1242 (10th Cir. 1999), *cert. denied*, 120 S. Ct. 2222 (2000).

"A competency claim based upon procedural due process involves a defendant's constitutional right, once a bona fide doubt has been raised as to competency, to an adequate state procedure to insure that he is in fact competent to stand trial." *Barnett v. Hargett*, 174 F.3d 1128, 1133-34 (10th Cir. 1999). A defendant is competent to stand trial if he "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding [and if] he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960) (quotation omitted). In order to prevail on a procedural due process competency claim, a petitioner must establish that the trial judge ignored facts, viewed objectively, raising a bona fide doubt regarding the petitioner's competency to stand trial. *See Walker*, 167 F.3d at 1343, 1345. "Evidence of irrational behavior, demeanor at trial, and prior medical opinion regarding competence are relevant to a bona fide doubt inquiry." *Wallace*, 191 F.3d 1243. Other relevant factors include evidence of mental illness and any representations of defense counsel about the defendant's incompetence. *See Drope v. Missouri*, 420 U.S. 162, 177 n.13, 181 (1975).

We review this claim in light of the evidence available to the trial court. *Cf. Valdez*, 219 F.3d at 1240 (requiring petitioner to establish trial court ignored evidence raising bona fide doubt regarding competency); *Walker*, 167 F.3d at 1343 (same). Examination of this evidence does not persuade us there was a bona fide doubt as to Mr. Walker's competence to stand trial.

Mr. Walker does have a history of mental illness. He received professional help after his grandmother died and he attempted to commit suicide. In 1986, he received treatment focusing on anger. Seven weeks before the murders he was treated primarily for depression for one week as an inpatient at Parkside Hospital. He was diagnosed with organic mood disorder secondary to polysubstance abuse. Mr. Walker's history of mental problems and substance abuse alone, however, do not establish incompetency to stand trial. *See McGregor*, 219 F.3d at 1251 (petition for rehearing en banc was granted); *Miles v. Dorsey*, 61 F.3d 1459, 1474 (10th Cir. 1995) (citing cases).

The record does not reflect that either prior to or during trial any mental health expert had found Mr. Walker incompetent to stand trial. Dr. Nicholson, who had examined Mr. Walker two weeks before trial, testified at the competency hearing that Mr. Walker was competent. He testified that he interviewed Mr. Walker on five occasions for approximately eight hours, and Mr. Walker attended to questions, listened carefully, and responded appropriately. He

admitted having no difficulty examining Mr. Walker. Although Dr. Nicholson had not evaluated Mr. Walker for competency, he reluctantly stated, because he was asked, that he believed Mr. Walker was competent. Dr. Nicholson can be considered an expert on competency. He had done extensive research and published articles on competency and competency testing. During his first stage trial testimony, he recited the correct competency standard and admitted conducting 200 competency examinations. In a post-conviction affidavit, dated August 8, 1996, more than seven years after trial, Dr. Nicholson stated he should have refused to offer his opinion on Mr. Walker's competency because the trial court's order had not asked him to address competency and he had not done a competency evaluation. He did not, however, actually indicate Mr. Walker was not competent to stand trial.

At no time prior to or during trial did defense counsel raise concerns about Mr. Walker's competency. "Defense counsel is often in the best position to determine whether a defendant's competency is questionable." *Bryson v. Ward*, 187 F.3d 1193, 1201 (10th Cir. 1999), *cert. denied*, 120 S. Ct. 1566 (2000); *see also Medina v. California*, 505 U.S. 437, 450 (1992). *But see McGregor*, 219 F.3d at 1251-52 (discounting value of defense counsel's concerns about competency where counsel alone expressed concerns about competency) (petition for rehearing en banc was granted). On the first morning of trial, counsel

explicitly denied raising to the court that Mr. Walker was not competent to stand trial. Counsel objected to any questions presented to Dr. Nicholson about competency because the defense never raised the issue of competency and instead hired Dr. Nicholson to examine Mr. Walker for insanity and to assess whether he created a great risk to others or whether he was a continuing threat. At no time did counsel request a competency evaluation or hearing. This court has recognized the importance of defense counsel's failure to raise a competency issue at trial when concluding no bona fide doubt about competency exists. *See Smallwood*, 191 F.3d at 1279; *Walker*, 167 F.3d at 1346.

Counsel averred, in his post-conviction affidavit, prepared August 7, 1996, over seven years after trial, that he did not spend enough time with Mr. Walker to determine whether competency was an issue. He indicated Mr. Walker never volunteered any information and was sheepish, docile, unemotional, and tired. Counsel also noted Mr. Walker had no reactions at trial, not even when the death sentence was announced. In the affidavit, counsel wondered if Mr. Walker was aware of what was going on, recognized he did not contribute to his defense, and later realized medication was the reason he was unable to aid in his defense. We give little credence to this belated affidavit in light of counsel's failure to raise any competency concerns during trial and his objections during the competency hearing.

-13-

The trial judge, who was cognizant of a competency issue as a result of the pretrial inquiry, did not express any concerns after having ample opportunity to observe Mr. Walker during trial. *See McGregor*, 219 F.3d at 1252 (citing cases) (petition for rehearing en banc was granted). Indeed, the trial judge's report indicated Mr. Walker was able to cooperate intelligently in his own defense. Nothing in the record indicates Mr. Walker's conduct or demeanor at trial was so bizarre and irrational that it raised a bona fide doubt regarding his competency. *See id*.

Despite Mr. Walker's history of mental illness, he has not established a bona fide doubt regarding his competency at the time of trial. *See Walker*, 167 F.3d at 1346-47. At the time of trial, no expert had deemed him incompetent. Neither the trial judge nor defense counsel expressed any concerns about his competency during trial. Nothing in the trial record indicates Mr. Walker was in a medication-induced stupor during trial which prevented him from understanding the proceedings or communicating with counsel. *See Van Woudenberg*, 211 F.3d at 568 (discerning nothing in record indicating petitioner engaged in irrational or unusual behavior during trial which would have alerted court to question competency). Accordingly, we conclude Mr. Walker has failed to show a bona

fide doubt regarding his ability to understand the proceedings or to assist his counsel in preparing a defense. [3] *See id.*

B. Substantive Due Process Competency Claim

A petitioner may make a substantive due process competency claim by alleging he was, in fact, tried and convicted while mentally incompetent. *See Walker*, 167 F.3d at 1344. Although the Oklahoma Court of Criminal Appeals deemed Mr. Walker to have procedurally defaulted this claim, *see Walker*, 933 P.2d at 340, a substantive due process mental competency claim may not be procedurally barred, *see Rogers v. Gibson*, 173 F.3d 1278, 1289 (10th Cir. 1999), *cert. denied*, 120 S. Ct. 944 (2000). To prevail on a substantive due process competency claim, a petitioner must demonstrate by clear and convincing

---

[3] Mr. Walker also argues the trial court held a competency hearing the morning trial began without giving him notice. *See* Okla. Stat. tit. 22, § 1175.2(B). Thus, according to Mr. Walker, trial counsel was unable to subpoena or call witnesses or have Mr. Walker evaluated due to surprise and ineffectiveness. According to Mr. Walker, the lack of notice denied him due process and a reliable assessment of his competency. The Oklahoma Court of Criminal Appeals concluded this argument was procedurally barred. *See Walker*, 933 P.2d at 340. The district court did not address this argument in its order, and the State does not address it on appeal. Because we conclude Mr. Walker has failed to show a bona fide doubt as to his competency, we conclude this argument is without merit.

evidence a real, substantial, and legitimate doubt regarding his competence to stand trial. [4] *See id.* at 1291 n.13.

In addition to the evidence discussed above, Mr. Walker submits his jail medical records and various affidavits to support this substantive competency claim. The jail records showed Mr. Walker had mental health problems and was a suicide risk. Up to thirty-six days before trial, he had bad dreams, heard voices, cried, huddled in the corner, and was depressed. Thirty-six days before trial, the last date of the jail records, it appears he was benefitting from the medications since he was sleeping. He, however, suffered from nervous side effects.

Mr. Walker was taking anti-psychotic medications at the time of trial. His dosages of Artane and Loxitane were at normal levels, [5] but the dosage of Asendin was low. He maintains that the medications caused him to be "constantly tired, uncaring, and steely eyed." Appellant's Br. at 14. Although "[a]ntipsychotic drugs [do] have the capacity to severely and even permanently affect an individual's ability to think and communicate[,]" *Bee v. Greaves*, 744 F.2d 1387, 1394 (10th Cir. 1984), the jail records are not clear and convincing evidence of a

---

[4] Mr. Walker incorrectly believes the bona fide doubt standard applies to substantive competency claims. *See* Appellant's Br. at 16.

[5] Mr. Walker incorrectly argues his seventy-five milligram daily dosage of Loxitane is fifteen milligrams greater than is recommended for the most severely disturbed patients. *See* Appellant's Br. at 11. Rather, a usual therapeutic dosage range is sixty to one hundred milligrams daily. *See* Physician's Desk Reference 3225 (53rd ed. 1999).

real, substantial, and legitimate doubt that Mr. Walker was incompetent at the time of trial.

Several post-conviction affidavits, prepared over seven years after trial, indicated Mr. Walker did not appear competent at trial. *Cf. Foster v. Ward*, 182 F.3d 1177, 1184 (10th Cir. 1999) (noting affidavits prepared ten years after trial raised questions regarding their veracity, but treating factual allegations in affidavits as true because State did not rebut affidavits), *cert. denied*, 120 S. Ct. 1438 (2000). In light of the other evidence, these affidavits are of little assistance.

In his own self-serving affidavit, Mr. Walker stated he felt "out of it" the whole time he was in jail before trial, he slept all the time, his medications made him confused, and he was not a help to his attorney. Vol. I, tab 17, app. 4 at 2-3. According to Mr. Walker, his medications were increased during the trial and he therefore had problems staying awake. He further stated that officers stood on either side of him holding him up when he walked to and from the courtroom. Overall, he did not remember much of the trial. A minister who visited Mr. Walker in jail before trial said Mr. Walker had trouble formulating ideas and putting thoughts into words. He further noted that Mr. Walker's speech was slow and slurred and he had difficulty staying awake. The minister stated Mr. Walker did not react to anything at trial. Also, Mr. Walker's mother stated in her

affidavit that he had a blank look and no reaction at trial. Mr. Walker's grandfather swore Mr. Walker was expressionless at trial and shuffled his feet like he could not walk.

Dr. Lippman, a neuropharmacologist, who studies the effects of drugs on the brain, evaluated Mr. Walker in May of 1996, seven years after his trial. He diagnosed Mr. Walker as suffering from Paradoxical Benzodiazepine Rage or Dyscontrol, Borderline Personality Disorder, Dysthymic Disorder and Major Depression. Dr. Lippman noted Mr. Walker had "a predisposing neurobiological vulnerability to drug abuse and also to his experiencing psychoticism and dissociative explosive dyscontrol under intense emotional stress, a form of the Borderline Syndrome, complicated by the effects of chronic drug abuse during the years of formative neurological and personality development." *Id.* app. 2 at 2. It was the doctor's opinion that Mr. Walker was not competent at the time of trial due to drug treatment. *Cf. Riggins v. Nevada*, 504 U.S. 127, 134 (1992) (noting antipsychotic drugs can have serious side effects). He reached this opinion based on witness descriptions of Mr. Walker and Mr. Walker's own report, not on medical records. Indeed, he had no medical records regarding Mr. Walker's response to treatment. Thus, Dr. Lippman merely speculated any symptoms of somnolence and ataxic gait were side effects of medication.

-18-

Dr. Watson, a psychologist who examined Mr. Walker in June of 1996, speculated Mr. Walker was in and out of a daze during trial due to significant psychological medication. He believed the use of the medications "appear[ed] to raise issues of competency." Vol. I, tab 17, app. 16 at 23.

The opinions of Dr Lippman and Dr. Watson, conducted over seven years after trial, do not establish by clear and convincing evidence a real, substantial, and legitimate doubt as to Mr. Walker's competency at the time of trial. *Cf. Foster*, 182 F.3d at 1191 (competency evaluation, made ten years after trial, does not necessarily generate sufficient doubt).

Because Mr. Walker has not shown a bona fide doubt as to his competency and does not provide sufficient additional new evidence of his incompetency at the time of trial, we conclude he cannot meet the more stringent substantive due process competency standard. *See Valdez*, 219 F.3d at 1241.

C.  Ineffective Assistance of Counsel

Mr. Walker argues that trial counsel's failure to ask for a proper competency hearing or to investigate and present evidence which would have shown a bona fide doubt regarding his competency was ineffective assistance of counsel. According to Mr. Walker, counsel never reviewed his jail medical records; never presented evidence he had been hospitalized two months before the crimes and at that time was diagnosed as suffering from polysubstance abuse,

major depression, personality disorder, and organic mood disorder; and never inquired about his odd behavior or investigated his medication. The federal district court rejected this argument based upon its conclusion that Mr. Walker's procedural and substantive due process competency claims failed.

Ineffective assistance of counsel claims are mixed questions of law and fact. *See, e.g.*, *Williamson v. Ward*, 110 F.3d 1508, 1513 (10th Cir. 1997). The constitutional right to effective assistance of counsel is defined in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Williams*, 120 S. Ct. at 1499. To obtain habeas relief, a petitioner must establish both that his attorney's representation was deficient, measured against an objective standard of reasonableness, and that there is a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 687, 688, 694. This court may address the performance and prejudice components in any order and need not address both if a petitioner fails to make the requisite showing for one. *See Cooks v. Ward*, 165 F.3d 1283, 1292-93 (10th Cir. 1998), *cert. denied*, 120 S. Ct. 94 (1999).

Regardless of whether counsel's performance was deficient, Mr. Walker was not prejudiced. As discussed above, even considering the new evidence, the record does not show Mr. Walker was unable to consult with trial counsel "'with a reasonable degree of rational understanding,' or that he lacked a rational and

factual comprehension of the proceedings against him." *Valdez*, 219 F.3d at 1244 (quoting *Walker*, 167 F.3d at 1343). There is no reasonable probability the outcome at trial would have been different but for counsel's allegedly deficient performance. Mr. Walker therefore has failed to establish prejudice stemming from counsel's alleged failure to obtain and present evidence. *See McGregor*, 219 F.3d at 1252 (petition for rehearing en banc was granted).

D. Evidentiary Hearing

Mr. Walker generally argues the district court erred in denying an evidentiary hearing on his competency claims. He presented affidavits to support these claims in post-conviction proceedings and sought an evidentiary hearing. His attempt to develop the factual basis of these claims in state court frees him from the limitations of 28 U.S.C. § 2254(e)(2). *See Williams v. Taylor*, 120 S. Ct. 1479, 1490-91 (2000); *Mayes v. Gibson*, 210 F.3d 1284, 1287 n.2 (10th Cir. 2000). Thus, Mr. Walker is entitled to an evidentiary hearing "if his allegations, if true and not contravened by the record," entitle him to habeas relief. *Mayes*, 210 F.3d at 1287. We conclude Mr. Walker is not entitled to an evidentiary hearing, because even if his evidence is true, it does not entitle him to habeas relief.

**II. Ineffective Assistance of Trial Counsel**

Mr. Walker argues four other instances of ineffective assistance of trial counsel: (1) failure to comply with the trial court's discovery order; (2) failure to seek suppression of Mr. Walker's statements; (3) failure to present evidence of Mr. Walker's heavy medication during trial; and (4) failure to investigate and present second stage evidence.

A. Procedural Bar

On post-conviction review, the Oklahoma Court of Criminal Appeals refused to consider Mr. Walker's claims of ineffective assistance of trial counsel because they had not been raised on direct appeal. *See Walker*, 933 P.2d at 332. The State, however, does not now assert an affirmative defense of procedural bar. *See Hooks v. Ward*, 184 F.3d 1206, 1216 (10th Cir. 1999). Moreover, the claim is not procedurally barred because Mr. Walker had the same counsel at trial and on appeal, *see English v. Cody*, 146 F.3d 1257, 1264 (10th Cir. 1998), even though his appellate counsel was not lead counsel at trial. Accordingly, we consider this claim on its merits, reviewing the district court's decision *de novo*. *See LaFevers*, 182 F.3d at 711. [6]

B. Merits

1. Failure to comply with the trial court's discovery order

---

[6]     The district court improperly applied AEDPA standards when deciding this claim. AEDPA did not apply because the state appellate court did not decide the claim on its merits.

Prior to trial, counsel failed to produce a copy of Dr. Nicholson's report [7] on or before May 1, 1989, as ordered. The trial court sanctioned Mr. Walker by allowing the State to examine Dr. Nicholson about the contents of the report. According to Mr. Walker, this caused his first and second stage defenses to be revealed prior to trial, giving the State a strategic advantage. Also, he complains the trial court, as part of the sanction, allowed examination into competency, which was beyond the scope of the report. The federal district court determined Mr. Walker failed to show prejudice because he merely asserted the effects of the examination were "incalculable."

Mr. Walker fails to argue deficient performance to this court. Nonetheless, counsel's performance was not deficient. On direct criminal appeal, the Oklahoma Court of Criminal Appeals, upon considering whether the trial court's decision to allow the State to cross-examine Dr. Nicholson before trial violated Mr. Walker's right to a fair trial, stated "[t]he trial court's order requiring [Mr.] Walker to give to the State a copy of Dr. Nicholson's report was in fact improper according to caselaw in effect at that time." *Walker*, 887 P.2d at 309.

Also, failure to disclose the report was not prejudicial. The Oklahoma Court of Criminal Appeals noted that because the State would have been entitled to the doctor's report during cross-examination, the trial court's error in providing

---

[7]     This report is not contained in the record.

the information before trial was harmless. *See id.* Also, the court found the pretrial disclosure did not violate any constitutional principles. *See id.* During the short in camera hearing, which did not rise to the level of a deposition, the State asked Dr. Nicholson what conclusions the report contained, not how he reached those conclusions. *See id.* at 310. Additionally, the State did not use the in camera testimony to impeach Dr. Nicholson on cross-examination at either stage of trial. *See id.* The record does not reflect, and Mr. Walker does not make a particularized showing, that the State actually secured a strategic advantage. Although Dr. Nicholson would not have been placed in a position of having to state whether Mr. Walker was competent if counsel had disclosed the report, Mr. Walker cannot show prejudice because, as shown, he has failed to establish sufficient doubt concerning his competency. We agree with the district court that Mr. Walker has failed to prove ineffective assistance of counsel.

2. Failure to seek suppression of Mr. Walker's statements

Mr. Walker argues counsel should have moved to suppress statements he involuntarily made while he was hospitalized and medicated. The federal district court determined Mr. Walker failed to show prejudice. As discussed in section V, Mr. Walker's underlying claim is without merit. Thus, his ineffectiveness claim likewise fails. *See Foster*, 182 F.3d at 1186.

3. Failure to present evidence of Mr. Walker's heavy medication during trial

Mr. Walker argues counsel failed to inform the jury that he was medicated due to his severe mental illness. In a post-conviction affidavit, an investigator stated that two jurors had noted Mr. Walker's lack of emotion or remorse and they had not known he was medicated. Without deciding prejudice, the federal district court determined Mr. Walker failed to make any argument supporting his conclusory statement that counsel's performance was deficient.

In a post-conviction affidavit, trial counsel admits he should have explained to the jury that Mr. Walker was heavily medicated. Regardless of whether this is sufficient to show deficient performance, we conclude Mr. Walker has not shown prejudice. Assuming without deciding that we may consider the jurors' statements, [8] we conclude they are merely speculative and do not compel a finding of believability. They were prepared by an investigator at the direction of an attorney and taken more than seven years after trial. Furthermore, such individual expressions of opinions are rarely helpful in reviewing the actions of the entire jury. *See Jacobs v. Marathon County*, 73 F.3d 164, 169 (7th Cir. 1996). The jury's verdict, not the individual expression of the jurors after trial, carries legal weight. *See id.* Therefore, we conclude Mr. Walker has failed to show a

___

[8] Oklahoma precludes consideration of juror statements regarding matters affecting the jury's deliberations. *See* Okla. Stat. tit. 12, § 2606(B). The State, however, fails to object to the statements on this basis.

reasonable probability the outcome at trial would have been different if the jury had known of his heavy medication.

### 4. Failure to investigate and present second-stage evidence

Mr. Walker argues counsel failed to present additional evidence of his traumatic upbringing, mental disease, family history of drug abuse and alcoholism, and drug abuse exacerbating his mental illness. He also suggests counsel should have learned of and presented evidence regarding his Paradoxical Benzodiazepine Rage or Dyscontrol. The federal district court determined that the omitted evidence was insufficient to affect the outcome of trial. Also, the court determined counsel's performance was not deficient because at the second stage counsel presented witnesses, cross-examined all of the State's witnesses, and had a reasonable strategy.

Counsel has a duty to make a reasonable investigation for mitigating evidence or to make a reasonable decision that particular investigation is unnecessary. *See Strickland*, 466 U.S. at 691. The reasonableness of counsel's investigation depends on the circumstances of the case. *See id.* at 688. Nevertheless, in a capital case, an attorney's duty to investigate all possible lines of defense is strictly observed. *See, e.g.*, *Boyd v. Ward*, 179 F.3d 904, 915 (10th Cir. 1999), *cert. denied*, 120 S. Ct. 1188 (2000).

Without deciding whether Mr. Walker could show deficient performance, we conclude he fails to satisfy *Strickland*'s prejudice requirement. Trial counsel did in fact prepare and present much mitigating evidence, as Mr. Walker recognizes. All first stage evidence was incorporated into the second stage. During the first stage, defense counsel presented evidence, through Mr. Walker's friends and family, of (1) his depression at the time of the crimes; (2) the fact that he began living with his grandparents at the age of thirteen; (3) his threats to commit suicide when a former girlfriend broke up with him and his actual suicide attempt by stabbing his wrist with an ice pick; (4) his threat to commit suicide the day before the crimes without mentioning harming anyone but himself; (5) his violence to a former girlfriend; and (6) his lack of comprehension when he lost his temper and control. In addition, Dr. Nicholson testified that Mr. Walker was depressed and had lost control at the time of the crimes. He diagnosed Mr. Walker as suffering from Borderline Personality Disorder, which is characterized by intense interpersonal relationships, unstable moods, self damaging acts, abuse of drugs, reckless behavior, and manipulative suicidal gestures or threats. Dr. Nicholson also believed Mr. Walker suffered from dysthymia, a chronically depressed mood disorder, and drug abuse.

At the second stage, defense counsel presented evidence that (1) Mr. Walker had been abused as a child; (2) his natural father was in prison for

two murders; (3) Mr. Walker had mood swings; (4) he had been sexually abused by an older stranger; (5) after he acted violently toward a former girlfriend, he would cry, apologize, and try to hurt himself; (6) after his grandmother died, he became a loner and tried to commit suicide; (7) his grandfather sought professional help for him; (8) he was only violent if he was really depressed; (9) the day before the murder, Shelly came to his home with the baby to visit; (10) he received treatment focusing on anger after an argument with his brother; (11) he was voluntarily hospitalized for one week approximately two months before the crimes for depression and was diagnosed with depression and polysubstance abuse; (12) he had two prior suicide attempts; (13) his substance abuse and suicide attempts were consistent with Borderline Personality Disorder; (14) at the time of the murders he was fluctuating between depression and rage; (15) he suffered from a mental disease causing him to be unable to control his actions; (16) he would not be a continuing threat if he was incarcerated; and (17) his violence level would decrease.

Much of the evidence Mr. Walker complains counsel did not present was actually presented. Cumulative evidence would not have caused the jury to reach a different result. *See Moore v. Reynolds*, 153 F.3d 1086, 1099 (10th Cir. 1998); *see also Nguyen v. Reynolds*, 131 F.3d 1340, 1349 (10th Cir. 1997) (even if evidence had been presented, it would have been insufficient to offset, explain, or

justify murders).  Additionally, this court has held, in a number of cases, that "evidence of a troubled childhood involving physical, emotional, sexual and/or substance abuse does not outweigh evidence supporting the conviction and evidence supporting multiple aggravating circumstances." *Foster*, 182 F.3d at 1189 (citing cases).  This case is not an exception. *See id.* Considering the strength of the government's case and the number of aggravating circumstances found, along with the additional and largely cumulative mitigating evidence that might have been presented and the mitigating evidence actually presented, *see Mayes*, 210 F.3d at 1290, there is not a reasonable probability that, absent the alleged inadequate investigation, the jury would have concluded the balance of aggravating and mitigating circumstances did not warrant death, *see Strickland*, 466 U.S. at 695.  We conclude the district court correctly denied habeas relief on this claim.

## III.  Presumption of Innocence

Mr. Walker argues the trial court violated his constitutional rights by failing to instruct the jury that he was presumed innocent.  The trial court instead instructed the jury that Mr. Walker was "presumed to be not guilty." *See* O.R. vol. II at 206. [9]  Mr. Walker argues this error was structural and therefore not

---

[9]      You are instructed that the defendant is presumed to be not guilty of the crime charged against him in the Information unless his guilt is established by evidence

(continued...)

-29-

subject to a harmless error analysis and, even if it were subject to a harmless error analysis, the federal district court applied an improper harmless error standard.

A. Procedural Bar

Mr. Walker first raised this claim in state post-conviction proceedings. The Oklahoma Court of Criminal Appeals recognized that "[i]n *Flores v. State*, [896 P.2d 558, 562 (Okla. Crim. App. 1995)], handed down five years after [Mr.] Walker filed his direct appeal brief-in-chief, this Court reversed a conviction on the basis of this flawed instruction, holding that it unconstitutionally diluted the presumption that guilt is to be proven beyond a reasonable doubt." *Walker*, 933 P.2d at 337 (footnote omitted). Nonetheless, because Mr. Walker did not raise this claim on direct appeal, the court determined it was waived since he could not demonstrate that the claim could not have been raised on direct appeal. *See id.* at 337-38. Because the State does not argue in this appeal that this claim is procedurally barred, we may consider it on its merits. *See Hooks*, 184 F.3d at 1216. We review the district court's determination of the claim *de novo*. *See LaFevers*, 182 F.3d at 711.

---

[9](...continued)
> beyond a reasonable doubt and that presumption of
> being not guilty continues with the defendant unless
> every material allegation of the Information is proven by
> evidence beyond a reasonable doubt.

O.R. vol. II at 206.

B. Merits

The federal district court determined it is unclear whether the instruction is unconstitutional. That court, however, decided giving the instruction was not structural error requiring automatic reversal of the conviction. It held the substantial evidence against Mr. Walker was the determining factor in the jury's guilty decision, not the semantic difference between "presumed innocent" and "presumed to be not guilty." Thus, the court concluded any error was harmless, as it did not have substantial or injurious effect on the jury's verdict. *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

Like the district court, we do not decide whether the given instruction is unconstitutional. [10] Instead, we first consider whether any error was structural, and we conclude it is not.

While most constitutional errors are amenable to harmless error analysis, *see Sullivan v. Louisiana*, 508 U.S. 275, 279 (1993), the deprivation of the right to trial by jury, "with consequences that are necessarily unquantifiable and

---

[10] Other courts have held in comparable situations that there is no constitutional error. *See Sherrill v. Hargett*, 184 F.3d 1172, 1176 n.3 (10th Cir.) (citing Kansas case holding "not guilty" instruction preserved presumption of innocence, *see State v. Pierce*, 927 P.2d 929, 936 (Kan. 1996)), *cert. denied*, 120 S. Ct. 507 (1999); *Zimmer v. McKune*, 87 F. Supp. 2d 1153, 1160 (D. Kan. 2000) (finding no Supreme Court precedent mandating use of words "presumed innocent" rather than "not guilty"), *certificate of appealability denied*, 216 F.3d 1089 (10th Cir. June 26, 2000) (table).

indeterminate, unquestionably qualifies as 'structural error,'" *id.* at 281-82. The Supreme Court has found structural error, subject to automatic reversal, only in a very small number of cases. *See Neder v. United States*, 527 U.S. 1, 8 (1999) (citing *Johnson v. United States*, 520 U.S. 461, 468 (1997), which cited *Gideon v. Wainwright*, 372 U.S. 335 (1963) (complete denial of counsel); *Tumey v. Ohio*, 273 U.S. 510 (1927) (biased trial judge); *Vasquez v. Hillery*, 474 U.S. 254 (1986) (racial discrimination in grand jury selection); *McKaskle v. Wiggins*, 465 U.S. 168 (1984) (denial of right to self-representation at trial); *Waller v. Georgia*, 467 U.S. 39 (1984) (denial of public trial); *Sullivan*, 508 U.S. 275 (defective reasonable doubt instruction)). The Supreme Court, however, has never addressed structural error regarding the presumption of innocence. "[I]f[, however,] the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any . . . errors that may have occurred are subject to harmless error analysis." *Rose v. Clark*, 478 U.S. 570, 579 (1986).

"The presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice." *Estelle v. Williams*, 425 U.S. 501, 503 (1976); *see also Cool v. United States*, 409 U.S. 100, 104 (1972) (per curiam) ("constitutionally rooted presumption of innocence"). The presumption serves as a reminder to the jury that the State has the burden of proving every element of the offense beyond a

reasonable doubt. *See Delo v. Lashley* , 507 U.S. 272, 278 (1993) (per curiam). A presumption of innocence instruction is not constitutionally required in every case, however. *See Kentucky v. Whorton* , 441 U.S. 786, 789 (1979) (per curiam). Rather, "[a]n instruction is constitutionally required only when, in light of the totality of the circumstances, there is a genuine danger that the jury will convict based on something other than the State's lawful evidence, proved beyond a reasonable doubt." *Lashley* , 507 U.S. at 278 (quotations omitted).

> While use of the particular phrase 'presumption of innocence'–or any other form of words–may not be constitutionally mandated, the Due Process Clause of the Fourteenth Amendment must be held to safeguard against dilution of the principle that guilt is to be established by probative evidence beyond a reasonable doubt.

*Taylor v. Kentucky* , 436 U.S. 478, 485-86 (1978) (quotation omitted); *see also* *Tillman v. Cook* , 215 F.3d 1116, 1123 (10th Cir. 2000) (determining trial judge has discretion to tailor jury instructions, as long as instructions correctly state law and fairly and adequately cover issues presented).

Based on these principles, it is clear any error here does not defy analysis by harmless error standards. *See Sullivan* , 508 U.S. at 281. The error, if any, did not affect the trial framework or the entire trial process, depriving Mr. Walker of basic protections for determining guilt or innocence, and rendering the trial fundamentally unfair. *See Neder* , 527 U.S. at 8-9. Instead, any error may be assessed in the context of the other evidence presented. *See Sullivan* , 508 U.S. at

281. The error, if any, did not affect the composition of the record. *See Rose*, 478 U.S. at 579 n.7. Mr. Walker had a full opportunity to put on evidence and make argument. *See id.* at 579. He was tried by an impartial jury, supervised by an impartial judge and had counsel. Apart from the challenged instruction, the jury was instructed to find Mr. Walker guilty beyond a reasonable doubt of either first or second degree murder. *See generally United States v. Doyle*, 130 F.3d 523, 535 (2d Cir. 1997) (reasonable doubt standard is means by which presumption of innocence is implemented, citing *In re Winship*, 397 U.S. 358, 363 (1970)). Thus, the State was required to prove each element of the offenses beyond a reasonable doubt and no burdens shifted to Mr. Walker. [11]

Because the error, if any, was trial and not structural error, we next consider whether the error was harmless. *See Arizona v. Fulminante*, 499 U.S. 279, 307-08 (1991) (recognizing harmless error analysis applies when there is trial error); *see also California v. Roy*, 519 U.S. 2, 5 (1996) (per curiam). Mr. Walker argues the *Chapman* "beyond a reasonable doubt" harmless error standard applies. This court has held, however, that the "'substantial and injurious effect or influence'" standard, set forth in *Brecht*, 507 U.S. at 623, 637 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)), which the federal

---

[11] Oklahoma does not consider the error to be structural. *See Flores*, 896 P.2d at 560 (citing *Chapman v. California*, 386 U.S. 18, 21-22 (1967), and determining instructional error was not harmless beyond reasonable doubt).

district court applied, is the proper standard. *See Crespin v. New Mexico*, 144 F.3d 641, 649 (10th Cir. 1998).

Harmless error analysis looks at the basis upon which the jury rested its verdict. *See Sullivan*, 508 U.S. at 279. In light of the totality of the circumstances, including the given instructions and the overwhelming evidence of guilt,[12] we have no doubt that Mr. Walker had a constitutionally fair trial. He was not judged on anything but the overwhelming evidence presented at trial. *See Taylor*, 436 U.S. at 486. Because the trial record establishes guilt beyond a reasonable doubt, the interest in fair and correct judgments has been satisfied. *See Rose*, 478 U.S. at 579. The Constitution entitled Mr. Walker to a fair trial, which he received, not a perfect trial. *See Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986).

C. Ineffective Assistance of Appellate Counsel

Mr. Walker argues that he was denied effective assistance of appellate counsel due to counsel's failure to raise this claim on direct appeal. On post-conviction review, the Oklahoma Court of Criminal Appeals concluded Mr. Walker failed to establish that counsel's performance was deficient. *See Walker*, 933 P.2d at 335-36. The Oklahoma appellate court's determination that

---

[12] Mr. Walker admits "the main battle" in this case was at the second stage. Appellant's Reply Br. at 11.

-35-

counsel's performance was not deficient was not unreasonable. *See* 28 U.S.C. § 2254(d).

An appellate attorney's performance may be deficient and may prejudice the defendant only if counsel fails to argue a "dead-bang winner," which is defined as "an issue which was obvious from the trial record, . . . *and* one which would have resulted in a reversal on appeal." *United States v. Cook*, 45 F.3d 388, 395 (10th Cir. 1995). A petitioner has the burden of proving appellate counsel omitted a "dead-bang winner." *See Parker v. Champion*, 148 F.3d 1219, 1221 (10th Cir. 1998).

Mr. Walker cannot meet that burden. Because, as discussed above, the instructional error, if indeed there was error, was harmless, and therefore not a "dead bang winner," counsel's performance was neither deficient nor prejudicial.

## IV. Lesser Included Offense

Mr. Walker argues his due process rights were violated when the trial court refused to instruct on the lesser included offense of first degree manslaughter. He asserts the evidence shows he committed the homicides in a heat of passion.

On direct appeal, the Oklahoma Court of Criminal Appeals determined as follows:

> The evidence did not in fact support a first degree manslaughter instruction. . . . Walker went to the trailer with a concealed, sharpened knife. He became angry with Shelly and began either hitting or stabbing her. When her uncle, Donnie, came running

to her rescue, Walker stabbed him in the stomach.  Walker then stabbed each of them numerous times, ultimately telling Donnie that he should have minded his own business.  At one point, he went to the kitchen cabinets, found an ice pick, and returned to stab Shelly with it.  He took Shelly's pulse to make certain she was dead.  In his statement to the police, he admitted that he intended to kill anyone who tried to prevent him from taking the baby.  This evidence did not show that Walker killed the two victims in a heat of passion and without a design to effect their deaths.  The trial judge properly denied Walker's requested instruction on this basis.

*Walker*, 887 P.2d at 313 (footnotes omitted).  Based on a careful review of the record, we conclude this determination was not unreasonable. [13] *See* 28 U.S.C. § 2254(d).

Due process requires that a lesser included offense instruction be given when the evidence warrants such an instruction.  *See Hopper v. Evans*, 456 U.S. 605, 611 (1982).  Oklahoma defines first degree manslaughter as homicide "perpetrated without a design to effect death, and in a heat of passion, but in a cruel and unusual manner, or by means of a dangerous weapon; unless it is committed under such circumstances as constitute excusable or justifiable homicide."  Okla. Stat. tit. 21, § 711(2).  The requisite elements of heat of passion first degree manslaughter are (1) adequate provocation; (2) passion or emotion

---

[13] This court has not determined whether an issue of sufficiency of the evidence to support the giving of a lesser included offense instruction is a factual or legal question, reviewable respectively under § 2254(d)(1) or § 2254(d)(2). *See Valdez*, 219 F.3d at 1242, 1244-45.  We do not decide this issue here, because the Oklahoma appellate court was not unreasonable in its determination of the facts or application of the law.

such as anger, rage, fear, or terror; (3) homicide occurring during a state of passion and before there is a reasonable opportunity for the passion to cool; and (4) the existence of a causal connection between the provocation, passion, and homicide.  *See Charm v. State*, 924 P.2d 754, 760 (Okla. Crim. App. 1996).

Oklahoma equates "a design to effect death" with "an intent to kill." *See Hogan v. Gibson*, 197 F.3d 1297, 1308 (10th Cir. 1999) (citing *Smith v. State*, 932 P.2d 521, 532-33 (Okla. Crim. App. 1996)), *petition for cert. filed*, 68 U.S.L.W. 3774 (U.S. June 8, 2000) (No. 99-1976).

> [E]ven if a person kills in the heat of passion, the killing may not be classified as first-degree manslaughter if the person intended death to result from the act.  A defendant is thus entitled to a manslaughter instruction only if the evidence at trial would allow a jury to rationally conclude the defendant's rage rendered him . . . incapable of forming a design to effect death.

*Id.* (citing *Allen v. State*, 821 P.2d 371, 374 (Okla. Crim. App. 1991)).

Mr. Walker's statement of his own intent is somewhat ambiguous.  In his statement to the police, Mr. Walker first indicated he was going to take the baby or murder Shelly or whoever got in his way and he had thought about it for months.  He, for the most part, was able to remember the criminal events.  As the Oklahoma Court of Criminal Appeals recognized in the fact section of its direct appeal opinion, Mr. Walker later contradicted himself by indicating he did not want to kill Shelly and instead wanted to kill himself because he knew someone needed to take care of the baby.  Also, he indicated that he intended to stab

himself if things "didn't work out" between himself and Shelly. Vol. 1, tab 17, app. 5 at 12. He did not remember killing or doing anything to Donnie, but did realize he had stabbed Donnie after he had done so. [14]

Dr. Nicholson testified that Mr. Walker's behavior was more consistent with a lack of intent to commit murder and a loss of control. Dr. Nicholson characterized Mr. Walker's actions as a manipulative suicide attempt followed by a loss of control. Nonetheless, Dr. Nicholson also believed Mr. Walker knew the nature of his actions at the time of the murder, such that he knew what he was doing and knew it was wrong.

Any ambiguity in Mr. Walker's statement did not permit reasonable inferences of both first degree murder and first degree manslaughter in light of the other evidence set forth in the Oklahoma Court of Criminal Appeals' opinion and Dr. Nicholson's belief that Mr. Walker knew what he was doing. Although Mr. Walker may have acted in a rage, the evidence shows he intended to kill both Shelly and Donnie. *See Walker*, 167 F.3d at 1349-50.

Thus, Mr. Walker has failed to show "the evidence presented at trial would permit a rational jury to find him guilty of first-degree manslaughter and acquit

---

[14] Mr. Walker also submitted an affidavit, prepared August 13, 1996, in which he stated that he was going to kill himself when he went to the trailer if Shelly did not listen to him. He averred he did not remember much of what happened that day. We reject this much belated, self-serving affidavit.

him of first-degree murder." *Hogan*, 197 F.3d at 1307 (citing *Hopper*, 456 U.S. at 610). [15] In light of the highly deferential standard with which we review the Oklahoma Court of Criminal Appeals' decision that there was not sufficient evidence in the record to support an instruction on first degree manslaughter, we conclude that decision was not unreasonable. *See* 28 U.S.C. § 2254(d).

Contrary to the Oklahoma Court of Criminal Appeals' determination, *see Walker*, 887 P.2d at 313 & n.54, Mr. Walker argues he did not elect a second degree murder defense over manslaughter. Regardless of whether he made such an election, the trial court reasonably refused to give a first degree manslaughter instruction.

## V. Admission of Statements Overheard by Deputy Fritz

Mr. Walker argues his constitutional rights were violated by the testimony of Deputy Fritz. Mr. Walker made certain statements to a medical doctor, which were overheard by Deputy Fritz, who guarded Mr. Walker while he was being hospitalized for his self-inflicted wounds. Deputy Fritz testified he heard

---

[15] Additionally, Mr. Walker has failed to establish the adequate provocation element of heat passion first degree manslaughter. Adequate provocation is "any improper conduct of the deceased toward the defendant which naturally or reasonably would have the effect of arousing a sudden heat of passion within a reasonable person in the position of the defendant." *Washington v. State*, 989 P.2d 960, 968 n.4 (Okla. Crim. App. 1999). Here, there was no evidence of adequate provocation for first degree manslaughter. Mr. Walker initiated the attacks. He attacked Shelly after she and Juanita refused to allow him to take the baby. Donnie and Juanita entered into the confrontation only after Mr. Walker began attacking Shelly.

-40-

Mr. Walker tell the doctor that he knew he had killed Shelly and he was glad he had done so; he was sorry he had killed Donnie, but it was none of Donnie's business; two months before the murders he had planned to kill his parents with a gun because his parents had beaten him as a child; and he was taking steroids and no one could push him around. Mr. Walker argues his statements were protected by the physician-patient relationship. *See* Okla. Stat. tit. 12, § 2503(4)(B). Also, he argues there was no evidence he knowingly and intelligently waived his right to counsel and against self-incrimination and no waiver may be implied due to his "drug induced disorientation and psychotic condition." Appellant's Br. at 62.

On direct appeal, the Oklahoma Court of Criminal Appeals determined Mr. Walker failed to show his communications to the doctor were privileged and were not intended to be disclosed to third persons, because he spoke loudly enough for Deputy Fritz to hear and Mr. Walker was cognizant of what was happening. *See Walker*, 887 P.2d at 321. The federal district court held that Mr. Walker failed to prove that any error denied him due process.

"[S]tate court rulings on the admissibility of evidence may not be questioned in federal habeas proceedings unless they render the trial so fundamentally unfair as to constitute a denial of federal constitutional rights." *Duvall v. Reynolds*, 139 F.3d 768, 787 (10th Cir. 1998) (quotation omitted); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Having carefully reviewed

-41-

the record, we conclude admission of the evidence did not deprive Mr. Walker of a fair trial.

In a post-conviction affidavit, prepared over seven years after trial, Mr. Walker stated he did not remember talking to the doctor and did not intend for the deputy to hear the conversation. This belated, self-serving affidavit is insufficient to show a denial of due process. Even if admission of Deputy Fritz' testimony was erroneous, it was harmless in light of the other overwhelming evidence in the case. The Oklahoma Court of Criminal Appeals' determination was not unreasonable. *See* 28 U.S.C. § 2254(d).

Mr. Walker's argument that he did not knowingly and intelligently waive his right to counsel and against self-incrimination is conclusory and unsupported. "We do not consider unsupported and undeveloped issues." *Moore v. Gibson*, 195 F.3d 1152, 1180 n.17 (10th Cir. 1999), *cert. denied*, 120 S. Ct. 2206 (2000).

## VI. Notice of Evidence to Support Aggravators

Mr. Walker argues the State's failure to provide sufficient and timely notice of the evidence to support the aggravators deprived him of due process. Mr. Walker received notice more than one and one half months before trial that the State intended to seek the death penalty. The State filed an amended Bill of Particulars four days later. Over three weeks before trial the State filed another amended Bill of Particulars. Mr. Walker contends the notice was not timely

-42-

because the amended notices changed the nature of the proceedings, denying him a chance to rebut the evidence used to support the death penalty. Additionally, he argues the State presented evidence not specified in the amended notice.

The Oklahoma Court of Criminal Appeals determined the notice was sufficient. *See Walker*, 887 P.2d at 316-17. The federal district court determined the notice was both timely and sufficient.

> The Due Process Clause mandates that a defendant receive adequate notice that he could receive the death penalty. *See Lankford v. Idaho*, 500 U.S. 110, 127 . . . (1991). Similarly, a defendant must have a meaningful opportunity to deny or explain the State's evidence used to procure a death sentence. *See Gardner v. Florida*, 430 U.S. 349, 362 . . . (1977).

*Duvall*, 139 F.3d at 797.

The record does not support Mr. Walker's argument that he was denied due process. The State gave him notice within a reasonable amount of time prior to trial that it would seek the death penalty upon conviction of the capital offenses. *Cf. Carpenter v. State*, 929 P.2d 988, 995 (Okla. Crim. App. 1996) (finding no evidence that one months' notice was insufficient where counsel did not request continuance); *Mayes v. State*, 887 P.2d 1288, 1299-1301 (Okla. Crim. App. 1994) (sufficiently timely notice provided four days before trial, where defendant was apprized long before that prosecution intended to seek death penalty). Thus, "'[t]he problem of trial by ambush did not arise in this case.'" *Duvall*, 139 F.3d at 797-98 (quoting *Long v. State*, 883 P.2d 167, 172 (Okla. Crim. App. 1994)).

-43-

Nor does the record show any prejudice due to the timing of the notice. *See*

*Mayes*, 210 F.3d at 1292.

Mr. Walker further complains the State presented aggravating evidence not

specified in the amended Bill of Particulars: (1) the State introduced slides rather

than photographs; (2) the medical examiner testified Shelly had been injured

before making the 911 call; and (3) the prosecutor impeached mitigation

witnesses with allegations Mr. Walker had no notice would be used. The

Oklahoma Court of Criminal Appeals noted that Okla. Stat. tit. 21, § 701.10 "does

not require the State to give a *detailed description* of anticipated second stage

evidence." *Walker*, 887 P.2d at 316. Rather, the State need only provide a

summary of the second stage evidence and a list of possible witnesses. *See id.* at

316-17.

This court is bound by the Oklahoma Court of Criminal Appeals'

interpretation of state law. *See Estelle*, 502 U.S. at 67-68. Under that

interpretation, Mr. Walker received sufficient notice. The Oklahoma Court of

Criminal Appeals reasonably determined (1) the slides were sufficiently described

as autopsy photographs; (2) the notice need not describe the medical examiner's

exact testimony; and (3) the notice requirement did not extend to proper

cross-examination questions. *See Walker*, 887 P.2d at 317. Also, the court noted

that all matters Mr. Walker complained of had been introduced at the guilt stage

of trial. *See id.* Because Mr. Walker had sufficient notice of the nature of the State's second stage evidence, we conclude the Oklahoma Court of Criminal Appeals' determination that the pretrial notice requirement was met was reasonable. *See* 28 U.S.C. § 2254(d).

## VII. Prosecutorial Misconduct

Mr. Walker argues that several instances of prosecutorial misconduct violated his right to a fair and impartial trial. The Oklahoma Court of Criminal Appeals denied relief, addressing in detail those comments which were objected to at trial and addressing for plain error those comments which were not objected to at trial, finding them not so prejudicial as to affect the right to a fair trial. *See Walker*, 887 P.2d at 315, 321. Because the state court disposed of all aspects of the prosecutorial misconduct claim on its merits, we apply AEDPA standards to all aspects of this claim. In doing so, we uphold the Oklahoma appellate court's result with respect to the unobjected to comments if our independent review persuades us the decision was not contrary to or an unreasonable application of clearly established federal law, or based upon an unreasonable determination of the facts in light of the evidence presented. *See Aycox v. Lytle*, 196 F.3d 1174, 1177-78 (10th Cir. 1999). Thus, we give deference to the state court's result, even when its reasoning was not expressly stated. *See id.* at 1177.

Generally, a prosecutor's improper remark will require reversal of a state conviction only if the remark sufficiently infected the trial, making it fundamentally unfair and, therefore, a denial of due process.        *See Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 645 (1974).  Inquiry into fundamental fairness requires examination of the entire proceedings.        *See id.* at 643.  It also requires a review of the strength of the evidence against the petitioner.        *See Fero v. Kerby*, 39 F.3d 1462, 1474 (10th Cir. 1994).  Ultimately, this court considers the jury's ability to judge the evidence fairly in light of the prosecutor's conduct.        *See id.* "[I]t is not enough that the prosecutor's remarks were undesirable or even universally condemned."    *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quotation omitted).  Counsel's failure to object to many of the comments, while not dispositive, is relevant to a fundamental fairness assessment.        *See Trice v. Ward*, 196 F.3d 1151, 1167 (10th Cir. 1999),     *cert. denied*, 2000 WL 656673 (U.S. Oct. 2, 2000) (No. 99-9518).

If, however, the alleged prosecutorial misconduct denied the petitioner a specific constitutional right, a habeas claim may be established without requiring proof the entire trial was rendered fundamentally unfair.        *See Paxton v. Ward*, 199 F.3d 1197, 1217 (10th Cir. 1999).

A. Jury Selection

Citing only state law, Mr. Walker argues the prosecutor improperly stated three times during voir dire his personal opinion that Mr. Walker deserved the death penalty. As the Oklahoma Court of Criminal Appeals determined, these unobjected to comments did not render the trial fundamentally unfair. The prosecutor admitted he was not a neutral participant and he had the burden of proof. Also, he informed the prospective jurors they must reach a verdict based on the law and the evidence.

B. First Stage

Again citing only state law, Mr. Walker argues the prosecutor improperly questioned defense witnesses about his alleged propensity for violence. The Oklahoma Court of Criminal Appeals held that defense counsel's direct examination of the defense witnesses, other than Dr. Nicholson, opened the inquiry to violent tendencies enabling the State to cover this subject on cross-examination. *See Walker*, 887 P.2d at 314. The court also held the State was permitted to cross-examine Dr. Nicholson regarding specific instances of Mr. Walker's previous violent acts because the questions contradicted Dr. Nicholson's testimony that Mr. Walker was incapable of forming specific intent to kill and helped the jury to understand what information the doctor used to diagnose Mr. Walker. *See id.* at 315. Viewing the prosecutor's questions in

the context of the proceedings, the questioning was not improper. *See United States v. Young*, 470 U.S. 1, 11-12, 18 (1985).

Mr. Walker contends the prosecutor appealed solely to the jurors' passion when he asked Mr. Walker's grandfather if Mr. Walker would need the large knife used for the crimes to do masonry work. The Oklahoma Court of Criminal Appeals reasonably concluded the State properly asked this question to show malice aforethought. *See Walker*, 887 P.2d at 315. The court determined that although defense counsel called this witness to support the theory that Mr. Walker did not intend to kill his victims, because he was on his way to work, the evidence showed he left home in possession of the murder weapon rather than a tool useful for his employment. *See id.*

Citing only state authority, Mr. Walker argues it was prejudicial for the prosecutor to ask a defense witness whether she could say Mr. Walker had not stabbed Donnie eleven times and Shelly thirty-two times. The Oklahoma Court of Criminal Appeals reasonably found this was proper impeachment for testimony elicited by defense counsel that Mr. Walker had not threatened any one the night before the murders. *See id.*

Again citing only state law, Mr. Walker argues the prosecutor tried to prejudice the jury during closing argument by suggesting the jury should do its

-48-

business.  It was not fundamental error to suggest that the jury was in the business of deciding whether to convict.

Mr. Walker argues the prosecutor improperly commented on his right to remain silent.  A prosecutor's comment on a criminal defendant's failure to testify implicates a specific constitutional right.  *See Griffin v. California*, 380 U.S. 609, 613-15 (1965).  Here, however, the prosecutor properly commented on Mr. Walker's failure to present evidence or call witnesses.  *See Trice*, 196 F.3d at 1167.  He did not improperly call attention to Mr. Walker's failure to testify.  *See Nguyen*, 131 F.3d at 1358.

C.  Second Stage

Mr. Walker argues the prosecutor asserted personal opinion by commenting that prison society is not excluded from the continuing threat to society aggravator and stating Mr. Walker deserved the death penalty.  The former is an accurate statement of Oklahoma law.  *See, e.g.*, *Salazar v. State*, 973 P.2d 315, 326 (Okla. Crim. App. 1998), *cert. denied*, 120 S. Ct. 226 (1999); *Hain v. State*, 919 P.2d 1130, 1148 (Okla. Crim. App. 1996).  With respect to the latter, the prosecutor admitted he was not neutral and was an advocate for the State.  Also, as the Oklahoma Court of Criminal Appeals reasonably determined, the latter was based solely on the evidence presented.  *See Walker*, 887 P.2d at 321; *cf. Bowser v. Boggs*, 20 F.3d 1060, 1065 (10th Cir. 1994) (although prosecutor's expression

of his personal opinion in closing argument was arguably improper, it did not render trial fundamentally unfair, because prosecutor did not rely on evidence outside record or misstate or misrepresent facts).

Mr. Walker argues the prosecutor erred by telling the jurors to check the aggravators once they found them before balancing them against the mitigators and deciding to impose the death penalty. He maintains the jurors may have believed the death penalty was automatic after checking the aggravators. This is unlikely in light of the instructions to weigh the mitigating and aggravating evidence. We assume the jury followed the instructions. *See Fero*, 39 F.3d at 1474. Also, the prosecutor acknowledged the jury must weigh the aggravating and mitigating evidence before deciding whether the death penalty should be imposed.

Mr. Walker argues the prosecutor implied the death penalty was mandatory by suggesting the only way for Mr. Walker to pay is with his own life. In light of the weighing instructions, the jury would not have believed the death penalty was mandatory.

Mr. Walker argues the prosecutor improperly told the jurors they had discretion to consider the mitigating evidence. The trial court instructed the jury to consider and determine the mitigating evidence. We assume the jury followed the instructions. *See id.*

Mr. Walker argues the prosecutor appealed to the jurors' passions and prejudices by telling them Mr. Walker had made his actions the jurors' business. As in the first stage, this comment did not cause the trial to be fundamentally unfair.

Citing only state law, Mr. Walker complains the prosecutor improperly sought sympathy for the victims by referring to Donnie as cold in his grave and by suggesting Juanita would take Donnie's comments seeking help with her to her grave. The Oklahoma appellate court found the second remark improper, but harmless given the overwhelming evidence supporting the aggravating circumstances. *See Walker*, 887 P.2d at 321-22. Although this court does not condone prosecutorial remarks encouraging the jury to allow sympathy to influence its decision, it is likely the nature of the crime itself produced sympathy before the prosecutor made any comments. *See Duvall*, 139 F.3d at 795. The prosecutor's appeals to emotion were not sufficient to render the trial fundamentally unfair.

According to Mr. Walker, the prosecution belittled the mitigating evidence, including his abusive childhood, lack of criminal record and mental illness, and urged the jury not to consider the mitigating evidence. The prosecutor is permitted to comment upon and to argue the appropriate weight to be given mitigating factors. *See Fox v. Ward*, 200 F.3d 1286, 1299-1300 (10th Cir. 2000),

-51-

*petition for cert. filed*, (U.S. June 30, 2000) (No. 00-5995). Furthermore, the comments did not contradict the jury instructions directing the jury to determine what circumstances were mitigating. *See id.* at 1299.

Mr. Walker argues the prosecutor attempted to diminish the jury's responsibility in violation of *Caldwell v. Mississippi*, 472 U.S. 320, 323, 328-29 (1985). The Oklahoma Court of Criminal Appeals found no error because the prosecutor was responding to defense comments and the prosecutor emphasized the jury had the responsibility to decide whether the death penalty was warranted. *See Walker*, 887 P.2d at 322 (citing *Caldwell*). The Oklahoma Court of Criminal Appeals did not unreasonably apply *Caldwell*. *See Pickens v. Gibson*, 206 F.3d 988, 1000 (10th Cir. 2000). Placing the comments in the context of the entire trial, *see Greer v. Miller*, 483 U.S. 756, 766 (1987), the jury would not have felt less responsible than it should, *see Romano v. Oklahoma*, 512 U.S. 1, 9 (1994). Furthermore, the jury instructions informed the jury it had the duty to determine the proper penalty.

These comments, considered either individually or cumulatively, did not violate Mr. Walker's constitutional rights or impede the jury's ability to consider the evidence fairly. The trial court instructed the jury at the first stage that counsels' arguments and remarks were not evidence and at the end of the second stage that the jury should rely on its recollection of the evidence and not

counsels' remarks. In light of the strong evidence of guilt and the weight of the aggravating circumstances, there is not a reasonable probability the outcome at either stage of trial would have been different without the alleged misconduct. *See Hoxsie v. Kerby*, 108 F.3d 1239, 1244-45 (10th Cir. 1997). The Oklahoma Court of Criminal Appeals' decision is not contrary to or an unreasonable application of Supreme Court precedent and is not based on an unreasonable determination of the facts in light of the evidence presented. *See* 28 U.S.C. § 2254(d)(1), (2).

We have considered all of Mr. Walker's arguments on appeal and are not persuaded constitutional error affected his trial. Accordingly, we AFFIRM the federal district court's denial of habeas corpus relief. [16]

---

[16] Although this court declined to issue a COA on the following three issues, Mr. Walker was allowed to state them at the end of his brief. We reaffirm the denial of a COA on the issue that the continuing threat aggravating circumstance is unconstitutionally vague and overbroad. We have repeatedly rejected that proposition. *See James v. Gibson*, 211 F.3d 543, 559 n.8 (10th Cir. 2000). We likewise reaffirm the denial of a COA on the issue that the jury was not adequately instructed on the sentencing scheme because it was not informed it had the option to return a life sentence even if it found aggravation outweighed mitigation. This, too, has been rejected. *See LaFevers*, 182 F.3d at 717-18. Finally, we reaffirm the denial of a COA on the issue that AEDPA standards were improperly and retroactively applied to Mr. Walker. The Supreme Court has rejected any argument that application of AEDPA is improper. *See Williams*, 120 S. Ct. at 1518.

*Walker v. Gibson*  , No. 99-5186

**MURPHY** , Circuit Judge, concurring in part and concurring in the result.

I concur in the majority opinion with the exception of section I.A.  As to that section, I concur only in the result.  In resolving Walker's procedural competency claim, the majority relies heavily on        *McGregor v. Gibson*  , 219 F.3d 1245, 1250-52 (10th Cir. 2000).    [1]  I continue to adhere to the view that       *McGregor* was wrongly decided.    *See id.*  at 1257-63 (Murphy, J., dissenting).  In particular, I believe the majority in    *McGregor*  improperly compartmentalized each of the factors bearing upon the question of      *bona fide*  doubt, analyzing only whether each individual factor, considered in isolation, created a        *bona fide*  doubt as to competency.  More importantly, the     *McGregor*  majority significantly undervalued the repeated, serious statements of trial counsel, made in open court, that McGregor was unable to assist in his own defense or grasp the seriousness of the proceedings.  Because   *McGregor*  sets the tone for the majority's resolution of Walker's procedural competency claim, I cannot join section I.A. of the majority opinion.

I concur, however, with the majority that Walker has not stated a viable procedural competency claim.  Rather than recapitulating the factors set out in the majority opinion, I simply note that viewing all that occurred at trial holistically, it cannot be said that the trial judge ignored facts which, viewed objectively, raise

---

[1]As noted in the majority opinion,      *McGregor*  will be reheard   *en banc* .

a *bona fide* doubt as to Walker's competency to stand trial. *See Walker v. Attorney General*, 167 F.3d 1339, 1343-45 (10th Cir. 1999). In particular, Walker's attorney specifically disavowed any question as to Walker's competency at trial; although Walker does have a history of mental illness, there was no medical testimony that should have placed the trial judge on notice that a competency question existed; there were no instances of bizarre or irrational behavior that should have caused the trial judge to question Walker's competency; and, although Walker was taking psychotropic medication at the time of trial, there is no indication that the dosage changed during the trial or that Walker was receiving his medication irregularly. Accordingly, I concur in the majority opinion except as to Section I.A. and concur in the judgment.