**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 12 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

DAVID JAY BROWN,

      Petitioner-Appellant,

v.

GARY GIBSON, Warden, Oklahoma
State Penitentiary,

      Respondent-Appellee.

No. 99-6419
(D.C. No. CIV-97-156-A)
(W.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRORBY**, **EBEL**, and **BRISCOE**, Circuit Judges.

---

David Jay Brown was convicted of the first degree murder of his former

father-in-law, Eldon McGuire. The jury found the one aggravator offered, that

he would be a continuing threat to society, and recommended a death sentence.

The Oklahoma Court of Criminal Appeals affirmed the conviction and death

sentence, *Brown v. State*, 871 P.2d 56 (Okla. Crim. App.), *cert. denied*, 513 U.S.

1003 (1994), and denied post-conviction relief, *Brown v. State*, 933 P.2d 316

---

[*]    This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

(Okla. Crim. App. 1997). Thereafter, Mr. Brown sought federal habeas corpus relief. The district court, in a very thorough and careful opinion, denied relief. Exercising jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253(c), we affirm.

**FACTS**

In the afternoon of February 20, 1988, Mr. McGuire was discovered dead by his daughter Lee Ann McGuire and his mother Lillie McGuire. The two had gone to check on him when he could not be reached by telephone. The prior evening, he had telephoned his wife Laverne McGuire, who was in the hospital, to tell her that he would visit her the next morning, but he had failed to do so. At the time he was found, there was unwrapped meat and cheese on the kitchen table, suggesting he was preparing to eat before he was murdered.

Mr. Brown and Lee Ann had had a stormy six-month marriage and eight-year relationship. Mr. McGuire had never approved of Mr. Brown. And Mr. Brown did not like and was afraid of Mr. McGuire. Once the two had had a physical confrontation.

Sometime after the marriage had ended, Mr. Brown went to the beauty shop where Lee Ann worked, taking a rifle with him. He argued with her, told the people in the shop not to touch the telephone or he would blow them away, and shot at a vacant chair. Most people in the shop retreated to the back room. Mr. Brown was arrested and charged with sixteen criminal counts, including

twelve counts of kidnaping. He thought the charges were manufactured by Mr. McGuire, who was a retired fire department captain and who Mr. Brown believed had influence with law enforcement. When the charges were not dismissed and Mr. Brown believed he could receive a greater than 150 year sentence, he fled from the area.

A little over a year later, he returned. He called Lee Ann. When she refused to have the charges dismissed, he became angry. She testified that he told her if they did not do something about the charges, they would all be sorry. Also, he described to her both her and her parents' actions on a particular night, indicating he had been watching them. He left an obscene message in the woodpile at her house. Approximately one month prior to the murder, Mr. Brown called the McGuire house. Laverne testified she picked up the telephone and heard Mr. Brown tell Mr. McGuire "you all's time" is up and they would pay for what they had done to him.

At approximately the same time, Mr. Brown told a friend he blamed Mr. McGuire for his problems. When the friend asked what he could do to help, Mr. Brown told him to beat up Mr. McGuire. Another ex-wife of Mr. Brown, Connie Brown, testified Mr. Brown said he would like to beat up Mr. McGuire. Jerry Clark, with whom Mr. Brown became acquainted after absconding, testified Mr. Brown said he would like to get drunk and get even with Mr. McGuire

because he had cost him everything and he did not care if the whole bunch was dead. Mr. Clark also testified Mr. Brown told him after the murder that he had gotten even with Mr. McGuire and had left him on the floor.

At trial, Mr. Brown testified he went to the McGuire house to convince Mr. McGuire to drop the charges. According to Mr. Brown, Mr. McGuire invited him in; hit him from behind, knocking him down; kicked toward him striking a bedroom door and told him he would kill him. As Mr. Brown ran to leave the house, Mr. McGuire fired a shot. Mr. Brown then pulled a semiautomatic gun from his back pocket and fired eighteen shots in self-defense.

Mr. McGuire sustained two bullet wounds to his head. One came from a gun fired at close range, and the other was a hard contact wound. He also suffered other gunshot wounds, including a wound to his left hand, rendering him incapable of using it.

## STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this appeal. *See Williams v. Taylor*, 529 U.S. 362, 402 (2000). Under AEDPA, the applicable standard of review depends upon whether the state courts addressed the merits of a particular claim for relief. If the state courts decided the merits of a claim, Mr. Brown will not be entitled to habeas relief unless the decision "was contrary to, or involved an unreasonable application of, clearly

established" Supreme Court precedent, 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2). We presume the state court's factual findings are correct, unless rebutted by clear and convincing evidence. *Id.* § 2254(e)(1). If the state courts did not decide a claim on its merits, we review the district court's legal conclusions *de novo* and its factual findings, if any, for clear error. *Hale v. Gibson*, 227 F.3d 1298, 1309 (10th Cir. 2000).

## DISCUSSION

### 1. Ineffective Assistance of Trial Counsel

Mr. Brown argues several ineffective assistance of trial counsel claims. To obtain habeas relief, he must establish both that his attorney's representation was deficient, measured against an objective standard of reasonableness, and that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 688, 694 (1984). This court may affirm the denial of habeas relief on whichever prong is easier to resolve. *See id.* at 697.

a. *Failure to investigate and present evidence in support of self defense and of victim's animosity toward Mr. Brown*. Mr. Brown argues counsel failed to obtain and use available evidence proving he was afraid of Mr. McGuire and acted in self-defense. This additional evidence includes: (1) affidavits and

-5-

medical records showing that he was hospitalized in September of 1983 for a gunshot wound allegedly inflicted at Mr. McGuire's behest and (2) that Mr. McGuire had tried to hire others, including Randy Stephens, to kill Mr. Brown.

On direct appeal, the Oklahoma Court of Criminal Appeals refused to consider, as not properly before it, the affidavits of (1) James Bunch, indicating Mr. McGuire had offered him $1500 in 1986 or 1987 to kill Mr. Brown; (2) James Pool, indicating Mr. McGuire had threatened to kill Mr. Brown; (3) Howard Hawthorn, indicating in 1983 he heard Mr. McGuire claim he would get Mr. Brown; (4) Donna Taylor and Linda Barker, indicating Lee Ann said that if Mr. Brown had treated her decently her father would not have had to shoot him; and (5) Barbara Mask, Mr. Brown's mother, indicating Lee Ann had speculated that Mr. McGuire had had Mr. Brown shot. *Brown*, 871 P.2d at 75. Also, the court refused to consider the medical records. *Id.* Even if the evidence was admissible, the court determined it could be considered only to show Mr. McGuire's character, that he and Mr. Brown did not get along and that friction still existed, a matter testified to by several witnesses, including Mr. Brown. *Id.* at 75-76. Because this evidence was cumulative, the court determined it would not have changed the outcome at trial and, therefore, Mr. Brown could not show prejudice. *Id.* Further, the court did not fault trial

counsel for failing to discover this evidence because nothing indicated Mr. Brown told his attorney about the shooting. *Id.* Even if counsel knew, the court held that failure to present the evidence was trial strategy, because the existing friction combined with the earlier shooting showed Mr. Brown had a strong motive for revenge. *Id.*

We conclude the Oklahoma Court of Criminal Appeals' determination is a reasonable application of *Strickland*. *See* 28 U.S.C. § 2254(d)(1). In a capital case, an attorney's duty to investigate all possible lines of defense is strictly observed. *See, e.g.*, *Boyd v. Ward*, 179 F.3d 904, 915 (10th Cir. 1999), *cert. denied*, 528 U.S. 1167 (2000). Counsel's investigations, however, are usually based on information provided by the defendant. *Strickland*, 466 U.S. at 691. Mr. Brown presented no evidence that he informed counsel of the 1983 gunshot wound, its possible origin, or Mr. McGuire's efforts to solicit someone to shoot him. Even if he did inform counsel, Mr. Brown has not overcome the presumption that counsel's performance was not constitutionally defective and was instead strategic. *See id.* at 689; *Wallace v. Ward*, 191 F.3d 1235, 1247 (10th Cir. 1999), *cert. denied*, 120 S. Ct. 2222 (2000). Also, in light of the total evidence presented at trial, there is no reasonable probability the result at trial would have been different if counsel had presented this evidence. *See Boyd*, 179 F.3d at 914, 915.

b. *Failure to object to prosecutorial misconduct.* To support this argument, Mr. Brown relies on his arguments *infra* in ground 3. The Oklahoma Court of Criminal Appeals concluded Mr. Brown could not show prejudice under *Strickland.* *See Brown*, 871 P.2d at 75. Based on the merits discussion below, we conclude this determination is reasonable. *See* 28 U.S.C. § 2254(d)(1).

c. *Failure to request second-degree-murder instruction, object to other crimes evidence and prevent Mr. Brown's absence from second stage.* Mr. Brown relies on his arguments *infra* in grounds 6, 3(a) and 5 to support these claims. The Oklahoma appellate court addressed and rejected the underlying merits claims on direct appeal. *Brown*, 871 P.2d at 66-67, 69-72. Based on the merits discussions below, we conclude that Mr. Brown cannot show prejudice and therefore counsel was not ineffective.

d. *Failure to object to inclusion of first-stage evidence into second stage.* Mr. Brown argues his counsel should have objected to inclusion of the first stage evidence into the second stage, because the Bill of Particulars did not list Mike Bradford, who testified at the first stage, as a second stage witness and mentioned only the beauty shop shooting and Mr. Brown's flight thereafter, whereas the incorporated first-stage evidence also included telephone threats, a puppy killing and Mr. Brown's alcohol abuse. On direct appeal, the Oklahoma appellate court

determined an extensive preliminary hearing afforded Mr. Brown notice of this evidence. *Brown*, 871 P.2d at 72.

> The Due Process Clause mandates that a defendant receive adequate notice that he could receive the death penalty. *See Lankford v. Idaho*, 500 U.S. 110, 127 . . . (1991). Similarly, a defendant must have a meaningful opportunity to deny or explain the State's evidence used to procure a death sentence. *See Gardner v. Florida*, 430 U.S. 349, 362 . . . (1977).

*Duvall v. Reynolds*, 139 F.3d 768, 797 (10th Cir. 1998). Because Mr. Brown had notice at the preliminary hearing, this was not a "trial by ambush." *Id.* at 797-98 (quotation omitted). Mr. Brown, therefore, has failed to show prejudice.

e. *Failure to investigate, prepare and present mitigation evidence*.

i. *Family and background evidence.* Mr. Brown argues counsel did not interview his family before presenting mitigating evidence and did not prepare for the second stage until immediately after the first stage, when he then asked four people to testify and to answer questions as best they could. Mr. Brown maintains counsel should have interviewed his half-sister to learn his mother was an alcoholic and a prostitute; he suffered severe emotional trauma due to the "horrid circumstances" of his childhood; he was harassed, emotionally harmed and got in fights because his mother spent time with black men; he tried to protect his siblings when his mother's husbands became violent; he tried to protect his mother when men abused her; he was the saddest of the children because his half-siblings had fathers who loved them; and he was the only person who took

care of his half-sister after she attempted suicide. Mr. Brown also believes that, if trial counsel had interviewed his mother, she would have revealed that the family was poor and Mr. Brown had an "abusive dreadful life." Other evidence Mr. Brown believes counsel should have presented included that he was left alone frequently, was abused, was an unhappy child who had to look after his younger half-siblings, helped pay for his half-sister's funeral and was a hard worker. On post-conviction review, the Oklahoma Court of Criminal Appeals determined Mr. Brown did not prove ineffective assistance of counsel. *Brown*, 933 P.2d at 321-22.

Addressing only whether Mr. Brown has shown prejudice, *see Strickland*, 466 U.S. at 697, we keep in mind the strength of the State's case and the aggravating factor the jury found, along with all the mitigating evidence that might have been presented. *Walker v. Gibson*, 228 F.3d 1217, 1234 (10th Cir. 2000). Here, strong evidence supported the conviction and continuing threat aggravator. Counsel did present mitigating evidence that Mr. Brown had an unsupervised upbringing, family members would stay in contact with him, he loved his children, he was a good father, he was kicked and bounced around his whole life and he had no guidance. Although the childhood evidence Mr. Brown now points to was admissible mitigating evidence, he presents no evidence indicating his childhood had an effect on his ability to conform his conduct to

-10-

noncriminal behavior. *See Stafford v. Saffle*, 34 F.3d 1557, 1565 (10th Cir. 1994). His troubled childhood does not outweigh the substantial evidence supporting his conviction and the continuing threat aggravator. *See Foster v. Ward*, 182 F.3d 1177, 1189 (10th Cir. 1999), *cert. denied*, 529 U.S. 1027 (2000). Given the strength of the State's case, the aggravating factor found by the jury and the nature of the crime, the later-identified mitigating evidence would not have created a reasonable probability the jury would not have sentenced Mr. Brown to death. *See Strickland*, 466 U.S. at 695; *Clayton v. Gibson*, 199 F.3d 1162, 1179 (10th Cir. 1999), *cert. denied*, 121 S. Ct. 100 (2000). Thus, the Oklahoma Court of Criminal Appeals' determination that Mr. Brown's counsel was not ineffective is a reasonable application of *Strickland*. *See* 28 U.S.C. § 2254(d)(1).

ii. *Mental health evidence.* Mr. Brown also argues counsel should have investigated and presented evidence of his psychological problems. Dr. Watson, a psychologist who evaluated Mr. Brown while he was in prison, speculated Mr. Brown had a brain dysfunction secondary to chronic alcohol and drug abuse for seventeen years and a mild degree of neuropsychological dysfunction. Mr. Brown believes Dr. Watson's report, along with the trial court's finding that he was under the influence of extreme mental or emotional disturbance when he committed the crime, shows counsel should have been aware

of the need to investigate. Further, Mr. Brown believes, in light of the finding of the continuing threat aggravator, counsel should have obtained evidence that he would do well in a structured setting. Dr. Watson did indicate Mr. Brown would make a good adjustment in prison.

On post-conviction review, the Oklahoma Court of Criminal Appeals decided Mr. Brown waived this claim, because he obtained, or could have obtained, this information earlier. *Brown*, 933 P.2d at 322. The federal district court concluded the state's procedural bar was not adequate after finding the Oklahoma appellate court did not consistently waive claims asserting this type of evidence in post-conviction proceedings.

We agree, but for different reasons, that the state procedural bar is not adequate. To be adequate, state courts must apply a state procedural bar consistently. *Romano v. Gibson*, 239 F.3d 1156, 1170 (10th Cir. 2001) (citing *Lambrix v. Singletary*, 520 U.S. 518, 522-23 (1997); *Johnson v. Mississippi*, 486 U.S. 578, 587 (1988)). Here, the Oklahoma Court of Criminal Appeals applied the same procedural bar inconsistently in the same case when it found procedural bar with respect to the mental health evidence but not with respect to the other mitigating evidence. In light of the inconsistency, this procedural bar will not preclude our consideration of the merits of this claim. *Cf. id.* (reaching

merits when state court did not apply procedural bar consistently in cases of co-defendants charged with same offenses and tried together).

In addressing the merits, the federal district court determined counsel's failure to seek a mental health expert did not result in prejudice. Reviewing *de novo*, *Hale*, 227 F.3d at 1309, we agree. Dr. Watson's conclusions are not compelling. Due to the callous nature of the crime and the abundant evidence supporting the guilty verdict and the continuing threat aggravator, no reasonable probability exists the outcome at either stage of trial would have been different if psychological evidence had been presented. *See Strickland*, 466 U.S. at 695. Further, we conclude counsel's representation was not deficient, because nothing in the record, apart from the trial judge's comment in his report, would have led a reasonable attorney to believe Mr. Brown's mental condition was a potentially mitigating factor. *See Mayes v. Gibson*, 210 F.3d 1284, 1289 n.3 (10th Cir.), *cert. denied*, 121 S. Ct. 586 (2000).

f. *Failure to object to hearsay, impeach Laverne, impeach Mr. Clark and object to prosecutor's demonstration.* On post-conviction review, the Oklahoma appellate court found Mr. Brown waived these claims because he could have raised them on direct appeal. *Brown*, 933 P.2d at 320. The federal district court, however, reached the merits of these claims to determine if ineffective assistance of appellate counsel provided cause for the procedural default. *See Coleman v.*

*Thompson*, 501 U.S. 722, 749-50 (1991) (holding federal courts do not consider claims defaulted in state court on independent or adequate procedural grounds without showing of cause and prejudice or fundamental miscarriage of justice). On appeal to this court, however, Mr. Brown does not specifically argue ineffective assistance of appellate counsel as cause excusing his procedural default. Nonetheless, because he makes a general ineffective assistance of appellate counsel argument, *see* ground 7 *infra*, we will consider these claims on their merits to determine if appellate counsel was ineffective.

Ineffective assistance of appellate counsel claims are also governed by *Strickland*. *Smith v. Massey*, 235 F.3d 1259, 1274 (10th Cir. 2000). Appellate counsel's performance may be deficient and prejudicial only if counsel failed to argue a "dead-bang winner." *Moore v. Gibson*, 195 F.3d 1152, 1180 (10th Cir. 1999), *cert. denied*, 530 U.S. 1208 (2000). Because none of Mr. Brown's claims is a "dead-bang winner," we conclude these claims are defaulted.

i. *Failure to object to hearsay*. Mr. Brown argues counsel should have objected to the prosecutor's (1) questioning Inez Baker about her statement that Ms. Mask told her Mr. Brown was going to kill five people, even though Ms. Baker denied making that statement; (2) arguing six times that Ms. Baker had testified Mr. Brown said he was going to kill five people; and (3) stating Ms. Brown had testified that she had told Oklahoma State Bureau of Investigation

-14-

(OSBI) agents Mr. Brown told her he would like to get even with his ex-in-laws and kill Mr. McGuire when she denied making that statement. The federal district court concluded counsel's failure to object did not result in prejudice under *Strickland*. Reviewing *de novo*, *Hale*, 227 F.3d at 1309, we agree. In light of the strong evidence against Mr. Brown, the result of the trial would not have been different if counsel had objected.

ii. *Failure to impeach Laverne.* Mr. Brown argues counsel should have shown Laverne gave a statement inconsistent with her testimony concerning the scope of Mr. Brown's alleged threats.[1] The federal district court determined that strong evidence, apart from Laverne's testimony, indicated Mr. Brown posed a continuing threat to society. Thus, the court concluded Mr. Brown could not show prejudice. Reviewing *de novo*, *id.*, we agree. The result at trial would not have been different if counsel had attempted to impeach Laverne. Her statements consistently showed Mr. Brown had made a threat. Substantial other evidence also showed Mr. Brown had made threats.

iii. *Failure to impeach Mr. Clark.* At trial, Mr. Clark testified that Mr. Brown said he would like to kill the victim. Mr. Brown argues counsel failed

---

[1]     Mr. Brown also argues counsel failed to object to testimony of Laverne and Lee Ann concerning the date Mr. Brown made the threatening calls as inconsistent with their statements. We do not consider these arguments raised for the first time on appeal. *See Jones v. Gibson*, 206 F.3d 946, 958 (10th Cir.), *cert. denied*, 121 S. Ct. 496 (2000).

to point out this testimony was inconsistent with Mr. Clark's statement and preliminary hearing testimony that he did not remember if Mr. Brown specifically mentioned he wanted to kill the victim. Reviewing *de novo*, *id.*, we conclude the federal district court correctly found no prejudice because Mr. Clark consistently stated Mr. Brown expressed a desire to get even with Mr. McGuire. Also, abundant other evidence existed of Mr. Brown's threats against the McGuires.

iv. *Failure to object to prosecutor's demonstration.* Mr. Brown argues the prosecutor's demonstration, used to prove Mr. Brown shot Mr. McGuire execution-style, was unsupported by the evidence, inflammatory, and prejudicial. The federal district court determined the evidence established Mr. Brown held the gun to the top of Mr. McGuire's head and fired two shots and Mr. McGuire was found in a fetal position, suggesting he was on his knees when the shots were fired. Upon *de novo* review, *id.*, we agree with the district court's analysis of the evidence and finding of no prejudice to establish ineffective assistance of appellate counsel.

g. *New claims.* Mr. Brown raises several claims of ineffective assistance of counsel for the first time on appeal.[2] We will not consider these claims.

_____

[2]    Specifically, he argues counsel failed to    (1) challenge the State's time line; (2) show the inconsistency of eye-witness identifications; (3) use prior inconsistencies of Lee Ann and Laverne; (4) challenge the State's theory that Mr. Brown checked out of his motel prior to the murder; (5) use Ms. Baker's

(continued...)

*See Jones*, 206 F.3d at 958. Furthermore, in part, Mr. Brown attempts to support these claims with evidence not presented to the district court.[3] We will not consider this evidence with respect to any claims raised in this appeal. *See Kennedy*, 225 F.3d at 1191 (recognizing this court does not consider evidence not before district court).

## 2. State's Improper Withholding of Reports

a. *Reports of Ms. Baker's Statements.* Mr. Brown argues the State did not provide him an OSBI report summarizing statements of Ms. Baker that damaged him.[4] In the report, Ms. Baker stated Ms. Mask told her that Mr. Brown had threatened to kill five people, including Mr. McGuire. Also, Ms. Baker reported

---

[2](...continued)
prior statements to challenge her credibility; (6) disclose the crime scene was contaminated; (7) investigate and present evidence of the victim's prior violent intentions toward Mr. Brown; and (8) seek funding for a forensic reconstruction expert. Alternatively, he argues if the State concealed this information, there is either a *Brady v. Maryland*, 373 U.S. 83 (1963), claim or prosecutorial misconduct.

[3] On appeal to this court, Mr. Brown submits for the first time a crime scene reconstruction. He believes that because this reconstruction was not available to him at the time he filed his federal habeas petition, this court should remand to the district court for an evidentiary hearing. We decline to do so. *See United States v. Kennedy*, 225 F.3d 1187, 1191-93 (10th Cir. 2000) (declining, under circumstances of that case, to remand), *cert. denied,* No. 00-1352, 2001 WL 214120 (U.S. Mar. 26, 2001).. This evidence does not overcome the significant other evidence establishing Mr. Brown's guilt.

[4] Mr. Brown also argues he should have been given a report reflecting Ms. Baker's attempt to involve herself in another capital case. The federal district court properly declined to address this claim as irrelevant.

-17-

that the day before the interview she, Ms. Mask and Ms. Brown ran Lee Ann off the road. At the bottom of the report, the investigator noted that Lee Ann denied being run off the road. Alternatively, Mr. Brown argues that if counsel had this report, counsel was ineffective for not using it for impeachment.

Mr. Brown first presented this argument in state post-conviction proceedings. The Oklahoma Court of Criminal Appeals deemed the claim waived. *Brown*, 933 P.2d at 324. Additionally, it found Mr. Brown failed to show the information was not received by trial counsel before trial. *Id.* With respect to Mr. Brown's alternative assertion, that trial counsel was ineffective for failing to use the report, the court determined Mr. Brown failed to provide argument or authority to support the claim and thus it too was waived. *See id.* at 325. The federal district court agreed no evidence showed the State wrongfully withheld the report. The court held this claim was procedurally defaulted because Mr. Brown could not show that if Ms. Baker had been cross examined with this report, the result of his trial would have been different. The court did not address Mr. Brown's argument that a fundamental miscarriage of justice would result if this claim is not considered on its merits.

On appeal, Mr. Brown continues to argue this claim must be considered to avoid a fundamental miscarriage of justice. To prove a fundamental miscarriage of justice, he must make a threshold showing of actual innocence. *Schlup v.*

-18-

*Delo*, 513 U.S. 298, 321 (1995). Mr. Brown, however, does not argue he is innocent of killing Mr. McGuire. Rather, he claims he acted in self defense. Thus, Mr. Brown argues legal, not factual, innocence. *See Beavers v. Saffle*, 216 F.3d 918, 923 (10th Cir. 2000). Accordingly, we conclude he cannot show a fundamental miscarriage of justice.

Even if this claim is not procedurally barred, it does not warrant habeas corpus relief. There is no likelihood the result at trial would have been different if the report had been disclosed or if counsel had used it, assuming counsel had the report. Ms. Baker denied making the statement. In any event, it is doubtful the jury gave much credence to her testimony. Even without her testimony, however, much evidence shows Mr. Brown made threats against Mr. McGuire.

b. *Reports of Others' Statements.* Mr. Brown also argues that the State failed to disclose the OSBI reports of Laverne, Lillie, and Lee Ann McGuire and Connie Brown. Because he did not make this claim in state court, the federal district court held it was procedurally barred. We agree.

## 3. Prosecutorial Misconduct

a. *Introduction of "other crimes" evidence.*

i. *Puppy killing.* Lee Ann testified that Mr. Brown had thrown her puppy against a wall and then shot and killed it after he learned it had gone to the bathroom on the floor. Mr. Brown argues this improper evidence was crucial to

the jury's finding that he would be a continuing threat to society.  Because

Mr. Brown failed to object to Lee Ann's testimony, the Oklahoma appellate court

reviewed only for fundamental error, finding none.  *Brown*, 871 P.2d at 67.  This

determination is reasonable.  *See* 28 U.S.C. § 2254(d).  While the jury probably

considered this evidence when considering the continuing threat aggravator, much

other evidence also supported it.

  ii.  *Oral sex.*  Mr. Brown argues the prosecutor sought to degrade and

intimidate him and prejudice the jury by asking him if he had called Laverne and

inquired if she wanted to have oral sex with him.  The Oklahoma Court of

Criminal Appeals found no reversible error in light of the overwhelming

evidence against Mr. Brown.  *Brown*, 871 P.2d at 67.  Considering all of the

evidence, this determination is reasonable.  *See* 28 U.S.C. § 2254(d).

Additionally, because the trial court sustained the objection to this question, the

trial court admitted no evidence of a bad act.

  iii.  *Abuse of Lee Ann and bulldozer incident*.  Mr. Brown argues the

prosecutor improperly asked Laverne if she had seen Lee Ann after Mr. Brown

had abused her and asked Lee Ann about his driving a bulldozer on the McGuire

property.  The Oklahoma Court of Criminal Appeals found no fundamental error

with respect to the abuse question and no admission of evidence of a bad act with

respect to the bulldozer incident because the trial court sustained an objection

before Lee Ann answered the question. *Brown*, 871 P.2d at 66-67. These determinations are reasonable. *See* 28 U.S.C. § 2254(d).

b. *Interjection of unproven theories.* Mr. Brown argues the prosecutor improperly advanced lay-in-wait and bullet-in-the-head theories. [5] The Oklahoma Court of Criminal Appeals found sufficient evidence to support the theories. *Brown*, 871 P.2d at 68. This determination is reasonable. *See* 28 U.S.C. § 2254(d).

c. *Use of Ms. Baker's inadmissible hearsay to impeach another witness.* Mr. Brown argues the prosecutor used inadmissible hearsay to impeach another witness when he impeached Ms. Baker with the statement she made to the OSBI. In that statement she reported Ms. Mask told her Mr. Brown had threatened to

---

[5] Mr. Brown further argues, for the first time, that the prosecutor failed to disclose that Lillie moved bullet casings. Relying on his new-on-appeal reconstruction report, he also contends (1) Mr. McGuire tried to kill him; (2) the angles of fire, shell casing locations and wound locations show Mr. McGuire fired first; (3) there was no series of bullet holes supporting the State's evidence; (4) he panicked while firing and did not commit premeditated murder; (5) the wound to Mr. McGuire's hand showing gun powder residue was one of the last to occur; (6) blood on the rifle indicated it was in Mr. McGuire's possession when the wound occurred, allegedly, at the end of the shootout; (7) Mr. McGuire was in shooting posture when he received the wounds with no residue; and (8) when the casings are in their proper place, they show Mr. McGuire was not shot in the southernmost part of the hallway. Mr. Brown also suggests counsel was ineffective for failing to present this evidence to the jury. We will not consider these new arguments. *See Jones*, 206 F.3d at 958.

-21-

kill five people, including Mr. McGuire. [6] The Oklahoma Court of Criminal Appeals recognized Ms. Baker's comments were erroneous, yet decided they did not require reversal because Ms. Baker denied making them, Mr. Brown told Mr. Clark he did not care if the whole family were dead, Laverne heard his threats to Mr. McGuire and Mr. Brown told Lee Ann they would be sorry for what they had done to him. *Brown*, 871 P.2d at 67. We conclude the state appellate court's determination is reasonable. *See* 28 U.S.C. § 2254(d).

d. *Attack on Ms. Mask's character*. The prosecutor elicited the fact that Ms. Mask's current address was a prison and asked her why she was in prison. Mr. Brown argues the prosecutor attempted to discredit her as a mitigation witness and to portray him as coming from a family of criminals. The Oklahoma Court of Criminal Appeals found no evidence Mr. Brown intended to call Ms. Mask as a second-stage witness and nothing showed he came from a family of criminals. *Brown*, 871 P.2d at 67. Further, it concluded any error was harmless. *Id.* These determinations are reasonable. *See* 28 U.S.C. § 2254(d). Mr. Brown fails to show how this questioning precluded him from presenting mitigating evidence. None of his second-stage witnesses had criminal records.

---

[6] Mr. Brown also argues, for the first time, that the prosecutor deliberately sought to deceive the court and jury by using false statements in violation of *Giglio v. United States*, 405 U.S. 150 (1972). We do not consider this new claim. *See Jones*, 206 F.3d at 958.

Thus, it is not likely the prosecutor tried to portray him as coming from a family of criminals.

e. *Denigrating mitigating evidence*. During second-stage closing argument, the prosecutor stated:

> Now, the witnesses have testified, of course, for the most part were family witnesses. And you observed their demeanor on the stand and I don't think, ladies and gentlemen, that you can conclude from what they said that there is sufficient mitigating evidence that should outweigh the aggravating circumstances which we've shown . . . .

Tr. at 963. Mr. Brown argues this remark attacked his mitigation evidence as presented by family members, who were lying; expressed the prosecutor's personal opinion on the weight of the evidence; and attempted to get the jury to ignore the mitigating evidence.

The Oklahoma Court of Criminal Appeals believed the statement "was more a comment on the sufficiency of the evidence than a comment the people who produced that evidence were lying." *Brown*, 871 P.2d at 68. This determination is reasonable. *See* 28 U.S.C. § 2254(d). The prosecutor is entitled to comment on the weight to be afforded mitigating evidence. *Fox v. Ward*, 200 F.3d 1286, 1299-1300 (10th Cir.), *cert. denied*, 121 S. Ct. 329 (2000). Also, as the district court correctly determined, the statement does not tell the jurors to disregard the mitigating evidence and does not suggest the family witnesses lied. Although the prosecutor may have improperly injected his personal opinion, his

-23-

doing so did not result in fundamental error. *See Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

## 4. Racial Prejudice Influenced Juror Jenkins

Mr. Brown argues Juror Jenkins violated his oath due to racial influences. In an affidavit, Juror Jenkins, the only black juror, stated he violated his oath in order to get along in the community and to appease the white jurors, even though he believed this was a case of self defense and Mr. Brown did not deserve a first degree murder conviction or the death penalty.

According to the State, the Oklahoma Court of Criminal Appeals and the federal district court, Mr. Brown first raised this claim on appeal from the denial of state post-conviction relief. The Oklahoma Court of Criminal Appeals therefore deemed it waived. *See Brown*, 933 P.2d at 325. Mr. Brown, however, did raise this claim on page forty-nine of his state post-conviction application brief. We therefore review *de novo* the district court's alternate determination that this claim would fail on its merits.[7] *See Hale*, 227 F.3d at 1309.

It is settled that a single juror may not impeach a jury's verdict. *See Tanner v. United States*, 483 U.S. 107, 117 (1987); *McDonald v. Pless*, 238 U.S. 264, 268-69 (1915). Assuming without deciding that we may consider

---

[7]   Because this claim can be easily decided on its merits, we do not consider whether it is otherwise procedurally barred. *See Romero v. Furlong*, 215 F.3d 1107, 1111 (10th Cir.), *cert. denied*, 121 S. Ct. 434 (2000).

Juror Jenkins' affidavit, *see Walker*, 228 F.3d at 1233 & n.8,[8] we conclude the affidavit does not compel reversal. It makes nonspecific allegations. Also, Juror Jenkins does not indicate why he did not bring evidence of alleged racial pressures to the trial court's attention before the jury reached its verdicts. We refuse to allow this allegation, raised long after the verdicts, to disrupt the finality of the trial. *Tanner*, 483 U.S. at 120; *see also Walker*, 228 F.3d at 1233 (holding jury's verdict, not individual juror's expressions after trial, carries legal weight).

## 5. Mr. Brown's Second-Stage Absence

Mr. Brown argues he did not knowingly, voluntarily and intelligently absent himself from the second-stage proceedings because he was under extreme mental and emotional disturbance. On direct appeal, the Oklahoma Court of Criminal Appeals held "an adequate waiver took place," because the trial court advised Mr. Brown he had the right to remain in the courtroom and he clearly and voluntarily expressed his desire to absent himself. *Brown*, 871 P.2d at 71. The court found nothing in the record indicating Mr. Brown was incompetent to waive his right to be present merely because he did not follow his attorney's advice. *Id.* at 72.

The Confrontation Clause of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment establish a defendant's right to be present

---

[8]    Okla. Stat. tit. 12, § 2606(B) prohibits consideration of juror statements regarding matters affecting jury deliberations. *See also* Fed. R. Evid. 606(b).

-25-

at all stages of a criminal trial, *Illinois v. Allen*, 397 U.S. 337, 338 (1970); *see also United States v. Gagnon*, 470 U.S. 522, 526 (1985) (per curiam), including capital sentencing, *see Gardner*, 430 U.S. at 358 (recognizing capital sentencing is critical stage of criminal proceeding). A defendant, however, may waive his right to be present, or he could lose that right through misconduct. *Snyder v. Massachusetts*, 291 U.S. 97, 106 (1934); [9] *see Clark v. Stinson*, 214 F.3d 315, 323 (2d Cir. 2000), *cert. denied*, 121 S. Ct. 865 (2001); *Amaya-Ruiz v. Stewart*, 121 F.3d 486, 496 (9th Cir. 1997); *see also Crosby v. United States*, 506 U.S. 255, 261 (1993) (declining to decide whether defendant could waive presence); *Drope v. Missouri*, 420 U.S. 162, 182 (1975) (declining to consider whether "it was constitutionally impermissible to conduct the remainder" of capital trial due to defendant's "enforced absence from a self-inflicted wound"). *But see Hall v. Wainwright*, 733 F.2d 766, 775 (11th Cir. 1984) (holding capital defendant may not waive presence at critical stage of trial).

A waiver is an "intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938). Although this court indulges every reasonable presumption against the loss of the constitutional right to be present, *Allen*, 397 U.S. at 343, the trial record shows that Mr. Brown did knowingly, voluntarily and intelligently waive that right. *See Faretta v.*

---

[9] *Snyder* was overruled in part on other grounds. *See Malloy v. Hogan*, 378 U.S. 1 (1964).

*California* , 422 U.S. 806, 835 (1975);  *see also  Amaya-Ruiz* , 121 F.3d at 496 (holding petitioner's waiver of presence at second stage, because he did not want to be shackled, to be knowing, intelligent and voluntary, where trial court warned petitioner of danger of absence and counsel advised against absence). His decision was unequivocal and clear.  Both the trial judge and counsel called to Mr. Brown's attention the possible disadvantages of not being present, yet he persisted in choosing to absent himself.  Indeed, he indicated he would disrupt proceedings if he was required to stay.  We conclude Mr. Brown understood the possible consequences of his absence and made a proper waiver.

The post-conviction affidavit of Dr. Watson, who examined Mr. Brown seven years after trial, however, did indicate Mr. Brown was not capable of making a knowing and intelligent waiver of his right to be present, due to his responses to extreme emotional stressors.  Dr. Watson believed Mr. Brown was unable to follow counsel's advice because Mr. Brown was under extreme pressure.  This after-the-fact assessment does not undermine a determination that Mr. Brown's waiver was knowing, intelligent and voluntary. [10]

In addition to the allegations of a constitutional violation, Mr. Brown also refers, without more, to state statutes providing a defendant must be present at

---

[10]    Because Mr. Brown knowingly, voluntarily and intelligently waived his right to be present, we do not address his claim of structural error.     *Cf. Larson v. Tansy* , 911 F.2d 392, 396 (10th Cir. 1990) (applying harmless error analysis to defendant's absence from return of jury verdict).

trial or when the verdict is received. *See* Okla. Stat. tit. 22, §§ 583, 912. If Mr. Brown is arguing the state appellate court erroneously interpreted and applied state law, he is not entitled to habeas relief, *see Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991), unless he can also show the state law violation resulted in a fundamentally unfair trial. *See Boyd*, 179 F.3d at 916. Here, there was no fundamental unfairness because Mr. Brown voluntarily, knowingly and intelligently waived his right to be present.

Mr. Brown argues his attorney was constitutionally ineffective for failing to request a competency hearing or a continuance. Although the federal district court determined Mr. Brown had failed to exhaust this argument, he did argue in state court that his attorney should have requested a competency evaluation. Mr. Brown, however, cannot show ineffective assistance of counsel because he waived his presence and rejected counsel's advice to remain in the courtroom and because he points to no evidence he was incompetent at the time he waived his rights. The mere fact he chose not to be present does not constitute incompetence, and therefore does not undermine the voluntariness determination.

## 6. Failure to Instruct on Second-Degree Murder

Mr. Brown argues the trial court should have instructed *sua sponte* on second-degree murder. On direct criminal appeal, the Oklahoma Court of Criminal Appeals concluded, without explanation, the evidence did not warrant

-28-

a second-degree murder instruction.    *See Brown*, 871 P.2d at 66.  Based on our

independent review of the record, we conclude this determination is reasonable.    [11]

*See Walker*, 228 F.3d at 1241 (giving deference to state court's result even when

its reasoning is not expressly stated).

Due process requires that a trial court give a lesser-included-offense

instruction when the evidence supports such an instruction.    *Hopper v. Evans*,

456 U.S. 605, 611 (1982).  Under Oklahoma law, second-degree murder includes

death perpetrated by an act imminently dangerous to the victim and evincing a

depraved mind, but without a premeditated design to effect death.  Okla. Stat. tit.

21, § 701.8(1).  We agree with the federal district court that if the jury had

believed Mr. Brown's self-defense theory, it would have found him not guilty of

first-degree murder.  After the jury rejected self defense, there was no evidence

left to support a finding Mr. Brown acted with a depraved mind without malice

aforethought.  We also agree with the district court that Mr. Brown failed to

show how his actions were imminently dangerous, yet without any design to

effect death.

---

[11]    This court has not decided if sufficiency of the evidence to support a lesser included offense instruction is a factual or a legal question.    *See Walker*, 228 F.3d at 1237 n.13.  Under the circumstances of this case, we need not decide this question.

-29-

## 7. Ineffective Assistance of Appellate Counsel

Mr. Brown argues appellate counsel was ineffective for failing to argue ineffective assistance of trial counsel. The Oklahoma appellate court rejected this claim, after determining trial counsel was not ineffective. *Brown*, 933 P.2d at 323. This determination is a reasonable application of *Strickland*. *See* 28 U.S.C. § 2254(d)(1). Furthermore, as raised before this court, this argument is conclusory. *See Walker*, 228 F.3d at 1239-40 (refusing to consider conclusory and unsupported issues).

## 8. Sufficiency of Evidence to Support Continuing Threat Aggravator

Mr. Brown argues the only admissible evidence at the second stage, that concerning the beauty shop incident and his flight thereafter, was insufficient to support the continuing threat aggravator. He believes the beauty shop incident fails to show a continuing threat because he was intoxicated and two women in the shop attempted to calm him and therefore were not threatened by him. He also asserts mere flight from the beauty shop does not support the aggravator.

Viewing the evidence in the light most favorable to the State, the Oklahoma appellate court determined sufficient evidence existed to support a finding of this aggravator. *Brown*, 871 P.2d at 76-77. In doing so, the court noted the beauty shop incident, Mr. Brown's threats and his grudge against Mr. McGuire and Lee Ann. *Id.* The court also determined the evidence established

Mr. Brown's attitude caused him to blame others for any major problems in his life. *Id.* at 77.

Under the rational factfinder standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), the question presented is whether a reasonable factfinder, who views the evidence in the light most favorable to the prosecution, would have found this aggravator beyond a reasonable doubt, *Romano*, 239 F.3d at 1177. This circuit has not resolved whether sufficiency of the evidence is a factual or legal question. *Hale*, 227 F.3d at 1335 n.17. In either event, Mr. Brown's claim lacks merit and, therefore, the Oklahoma appellate court's determination is not unreasonable under 28 U.S.C. § 2254(d)(1) or (2). Contrary to his argument, the jury was not limited to considering only the beauty shop incident or his flight.

## 9. Failure to List All Mitigating Evidence

Mr. Brown argues the jury did not receive particularized guidance because the instructions did not list four mitigators later set forth in the trial court's report: (1) he had no significant past criminal history; (2) the murder occurred while he was under extreme mental or emotional disturbance; (3) the victim participated in the homicidal conduct; and (4) the homicide occurred under circumstances which Mr. Brown believed provided a moral justification or extenuation of his conduct. The Oklahoma appellate court initially noted the trial

court had instructed the jury to determine what mitigating evidence was present. *Brown*, 871 P.2d at 74. The appellate court then held there was no need for instruction on the other four: (1) in light of the kidnaping episode, the jury would not have believed Mr. Brown had no significant past criminal history; (2) if he had committed the murder under extreme emotional disturbance, the jury would have selected manslaughter; (3) the jury considered the victim's participation when it rejected the self-defense theory; and (4) instruction on moral justification would have led the jury to believe Mr. Brown could justify killing anyone. *Id.* We conclude these determinations are reasonable. *See* 28 U.S.C. § 2254(d). Moreover, the jury instructions, considered as a whole, did not preclude the jury from considering any mitigating evidence. *See Bryson v. Ward*, 187 F.3d 1193, 1209-10 (10th Cir. 1999) (citing Supreme Court cases), *cert. denied*, 529 U.S. 1058 (2000).

## 10. Cumulative Error

The federal district court rejected Mr. Brown's claim that the cumulative impact of the trial errors denied him a fair trial. We agree.

## 11. Evidentiary Hearing

Mr. Brown argues the federal district court should have granted an evidentiary hearing. Mr. Brown's request for an evidentiary hearing satisfies neither AEDPA standards, *see* 28 U.S.C. § 2254(e)(2), nor pre-AEDPA

-32-

standards, *see Walker*, 228 F.3d at 1231. We therefore conclude the district court properly denied an evidentiary hearing.

## 12. Certificate Of Appealability Denied

Mr. Brown lists seven issues, for which this court denied a certificate of appealability (COA), that he wishes to pursue and preserve for appeal. We reaffirm the denial of COA on each of these issues. This court has repeatedly rejected Mr. Brown's arguments that (1) Oklahoma applies and reviews the continuing threat aggravator in an unconstitutionally vague and overbroad manner, *see, e.g.*, *Moore*, 195 F.3d at 1177-78; (2) the trial court improperly failed to instruct the jury it had the option to return a life sentence, *see, e.g.*, *Walker*, 228 F.3d at 1244 n.16; (3) the trial court improperly failed to instruct the jury on the presumption of life, *see, e.g.*, *Smallwood v. Gibson*, 191 F.3d 1257, 1271-72 (10th Cir. 1999), *cert. denied*, 121 S. Ct. 88 (2000); (4) the mitigation instructions allowed the jury to disregard mitigation evidence, *see, e.g.*, *Boyd*, 179 F.3d at 923-24; and (5) the anti-sympathy instruction given at both stages denied Mr. Brown his right to have the jury fully and fairly consider the mitigation evidence, *see, e.g.*, *Smallwood*, 191 F.3d at 1272-73. Further, Mr. Brown makes only conclusory assertions that (6) Junior Turner was not qualified as an expert or knowledgeable lay witness and (7) the jury was selected under a scheme

excluding certain classes of citizens from the pool.    *See Walker*, 228 F.3d at

1239-40 (refusing to consider unsupported issues).

## CONCLUSION

We have reviewed the record in this case and considered all of Mr. Brown's

arguments on appeal, including those not specifically addressed, and are not

persuaded constitutional error infected his trial.  We therefore AFFIRM the

district court's denial of habeas corpus relief.


Entered for the Court


Wade Brorby
Circuit Judge